WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY, a corporation, &c., complainant,

v.

JACOB WEIKEL, ISAAC BACHARACH and ROBERT CAMERON, receivers of Shelburne, Incorporated, a corporation, &c., et al., defendants.

[Decided April 22d, 1932.]

*Messrs. Cole & Cole,* for the complainant Westinghouse Electric and Manufacturing Company.

*Mr. Emerson L. Richards,* for the defendants Jacob Weikel, Isaac Bacharach and Robert Cameron, receivers for Shelburne, Incorporated.

*Messrs. Thompson & Hanstein,* for the defendant Atlantic Safe Deposit and Trust Company.

INGERSOLL, V. C.

It was stipulated by and between counsel that a bill to foreclose the mortgage made by Shelburne, Incorporated, to New York Trust Company, bearing date 1st of July, 1925, recorded in the Atlantic county clerk's office, book 357 of mortgages, page 65, was filed on July 13th, 1931, by the New York Trust Company, trustee under said mortgage. Said mortgage was a trust mortgage given to secure an issue of three million dollars of bonds and contained, with respect to the description in said mortgage, the following:

"Now, therefore, for the purpose of securing the payment of the principal and interest of all bonds issued under this indenture, and which shall be at any time outstanding, ratably and without discrimination or preference, except as provided in Section 2 of Article II of this indenture, according to their tenor, purport and effect, and to secure the performance of the covenants and conditions herein contained, and to declare the terms and conditions upon which such bonds are issued, received and held, and for and in consideration of the acceptance and purchase of said bonds by the holders thereof, the Company has granted, bargained, sold, aliened, enfeoffed, released, conveyed, confirmed, transferred, assigned, mortgaged and set over, and by these presents does grant, bargain, sell, alien, enfeoff, release, convey, confirm, transfer, assign, mortgage and set over, unto the said Trustee, its successor or successors in trust, and its and their succesors, heirs, executors, administrators and assigns forever, all and singular, the property of every description, real, personal or mixed, now owned by the Company, and more particularly described as follows:" * * *

The property thereafter described is the Hotel Shelburne and the land upon which the same is erected in Atlantic City,

New Jersey, and containing the store leased to Westinghouse Electric and Manufacturing Company. Following the description in said mortgage appears the following:

"Together with all and singular the lands, including the lands under water and riparian rights, the buildings and improvements now erected or which may hereafter be erected by the Company on the premises, or any part thereof, all woods, ways, rights, liberties, privileges, tenements, hereditaments and appurtenances, belonging or in any wise appertaining or hereafter to appertain or belong to any of the property hereby granted or described or intended so to be, with the reversion and reversions, remainder and remainders, rents, issues, income, produce and profits thereof and of every part and parcel thereof;

"Together with any and all rights, privileges and franchises which the Company now has or is entitled to exercise, or which it may in the future have or become entitled to exercise, with respect to the mortgaged property or any part thereof, in and for the purposes of the business now or at any time hereafter to be conducted by the Company, including any and all good will of the Company which it now has or which it may hereafter acquire, and any and all trademarks and registrations thereof and all applications for any thereof, and all trade names and all other proprietary rights now owned, held or enjoyed or hereafter to be acquired by the Company in connection with its said business;

"And together with all the estate, right, title, interest, claim and demand whatsoever at law, as well as in equity, which the Company now has or may hereafter acquire, in and to the aforesaid property and every part and parcel thereof.

"To have and to hold all and singular the mortgaged property aforesaid unto the Trustee, its successor or successors in trust and its or their successors, heirs, executors, administrators and assigns, forever;

"In trust, nevertheless, for the equal and *pro rata* benefit and security of each and every of the present and future holders of the bonds and coupons issued hereunder, without preference, priority or distinction as to participation in the lien, benefits and protection hereof of any one bond or coupon over or from any other, by reason of priority in the issue, maturity or negotiation thereof, or for any other reason whatsoever, so that each and all of said bonds and coupons shall, except as otherwise in Section 2 of Article II of this indenture expressly provided, have the same right, lien and privilege under this indenture and shall be equally secured hereby, with the same effect as if all of said bonds and coupons had been made, issued and negotiated simultaneously on the date of the delivery hereof;

"Provided, nevertheless, and these presents are upon the express condition, that if the Company, its successors or assigns, shall well and truly pay or cause to be paid the several sums of money in the several bonds hereinbefore mentioned, with interest according to the

true intent and meaning of said bonds and each of them, or if the bonds and the interest thereon shall become in any way paid and satisfied, and evidence of such payment and satisfaction is furnished to the Trustee to its satisfaction, and if the Company, its successors or assigns, shall well and truly perform and observe all and singular the covenants, promises and conditions in the said bonds and coupons and in this indenture expressed to be kept, performed and observed by or on the part of the Company, then these presents and the estates and rights hereby granted shall cease, determine and be void; otherwise these presents shall be and remain in full force and effect."

A demand having been made upon Westinghouse Electric and Manufacturing Company for the payment of rent due under said lease both by the receivers appointed in the foregoing foreclosure suit and by the Atlantic Safe Deposit and Trust Company, a bill of interpleader was filed on August 18th, 1931, by the Westinghouse Electric and Manufacturing Company and thereunder a decree of interpleader was entered both as against the receivers appointed in the aforesaid foreclosure suit and the Atlantic Safe Deposit and Trust Company. Statements were filed by both the receivers and the Atlantic Safe Deposit and Trust Company. At the hearing upon said statements it was stipulated and agreed between counsel in open court that all the facts in the statement of claim filed by each of the parties to said interpleader suit were to be taken as true with the exception of the conclusions alleged in the statements and the assertion of priorities, that being a question left for the determination of the court.

It is further stipulated that the Atlantic Safe Deposit and Trust Company has, since the institution of the above entitled suit, merged with the Guarantee Trust Company of Atlantic City and is now known as the Guarantee Trust Company.

The same question now to be considered was decided by me on March 14th of this year, on motion to strike out the answer of the Atlantic Safe Deposit and Trust Company in the foreclosure proceedings brought by the New York Trust Company, complainant, and Shelburne, Incorporated, et al., defendants. In that case I said:

"Vice-Chancellor Berry, in *Paramount Building and Loan Association of Newark* v. *Sacks, 107 N. J. Eq. 328,* said:

" 'Ordinarily, as between a mortgagor and a receiver appointed at the suit of a mortgagee, the receiver is entitled to collect only such rents as fall due after his appointment, and the rents falling due prior thereto belong to the mortgagor. *Stewart* v. *Fairchild-Baldwin Co., 91 N. J. Eq. 86; Myers* v. *Brown, 92 N. J. Eq. 348; New Order Building and Loan Association* v. *222 Chancellor Avenue, 106 N. J. Eq. 1.* Assuming that the third mortgagee does not stand in the shoes of the mortgagor, he would be entitled to the rent which accrued prior to the appointment of the receiver if the rule of those cases applied here. But in none of those cases did the mortgage contain a clause assigning the rents as additional security and the decisions are not, therefore, controlling.

" 'That it is competent for the parties to a mortgage to make such assignment, and that such assignment will be held effective as against subsequent encumbrancers, is clearly indicated by Vice-Chancellor Backes in *Myers* v. *Brown, supra* (at *p. 351*); by Chief-Justice Gummere, speaking for the court of errors and appeals in *Henn* v. *Hendricks, 104 N. J. Eq. 166,* and by Mr. Justice Harlan, speaking for the United States supreme court in *Freedman's Saving and Trust Co.,* v. *Shepherd, 127 U. S. 494; 32 L. Ed. 163.* In the case last cited, Mr. Justice Harlan said:

" ' "It is, of course, competent for the parties to provide in the mortgage for the payment of rents and profits to the mortgagee, even while the mortgagor remains in possession." ' "

It will be noticed, however, that the asignment here spoken of is an assignment included in the mortgage. In *Freedman's Saving and Trust Co.* v. *Shepherd, supra,* it was held:

"It is, of course, competent for the parties to provide in the mortgage for the payment of rents and profits to the mortgagee, even while the mortgagor remains in possession."

It is manifest through all of the cases that the mortgagee is entitled to rents of the mortgaged premises accruing after the mortgagee moves for possession or its equivalent, the appointment of a receiver. *Stanton* v. *Metropolitan Lumber Co., 107 N. J. Eq. 345.*

Mr. Justice Trenchard, in *Stewart* v. *Fairchild-Baldwin Co., supra,* said:

"It is important, in the first place, to clearly bear in mind the relationship between the mortgagor and the mortgagee, and the rights of a mortgagee in this state.

"The common law rule, that a mortgage created an immediate estate in the mortgagee, and vested in him immediately, upon the execution and delivery of the mortgage, an actual estate with a right of immediate possession, subject only to be defeated by the payment of the mortgage money, has not been adopted by our courts. *Woodside* v. *Adams, 40 N. J. Law 417; Shields* v. *Lozear, 34 N. J. Law 496; Sanderson* v. *Price, 21 N. J. Law 637.*

"However, upon breach of condition, the mortgagee's estate has all the incidents of a common law title, and he has the right to the possession of the mortgaged premises. *Woodside* v. *Adams, supra; Shields* v. *Lozear, supra.*

"The mortgagee, after breach of condition, having a title in the mortgaged premises possessing all the incidents of a common law title, and only subject to be divested by the equitable proceeding to redeem, and having the right to possess the property, has the right, from the date of taking such possession, to the profits arising from the estate. At common law, he could not be compelled to account to the mortgagor for the value of the profits taken by him. This was a hardship upon the mortgagor, and so a court of equity will compel the mortgagee to credit to the debt the profits received by him. This was done upon the theory, always obtaining in the court of chancery, that until the mortgagor has been foreclosed by decree of and from the right to redeem, the mortgage, even after default, was a security.

"Since after default the mortgagee can take possession or obtain possession by ejectment of the mortgaged premises, it follows, as a matter of course, that not until the mortgagee has obtained possession by either one of the above methods, can he take rents or profits arising from the lands. To hold otherwise would destroy the rights of the mortgagor up to the date of default and taking possession. It is only when

the mortgagee acts upon default, and takes possession, that he puts to an end the rights of the mortgagor to the incidents that arise out of possession, subject, of course, to redemption by the mortgagor.

"Now a receiver appointed by a court of equity in a foreclosure proceeding is a substitute for taking possession under the common law. It is a convenient substitute, because in cases where several mortgagees hold liens upon the premises in question, their rights in the rents and profits can better be adjudicated. But such a receiver has no more rights than the mortgagee himself would have and since a mortgagee taking possession of mortgaged premises is not entitled to rents accrued before the date of taking possession, it follows that a receiver is not. The mortgagee is not entitled to any special favor. He is a secured creditor and has dealt with open eyes. He must look to the security. It follows, therefore, when, as here, a mortgage does not expressly pledge the rents, issues and profits of the mortgaged premises as further security for the payment of the debt, the rents accrued prior to the appointment of a receiver in a foreclosure proceeding (appointed on the application of the second mortgagee) belong to the mortgagor or the owner of the fee, and such receiver will not be directed to collect and apply them in payment either of unpaid taxes or interest on the mortgage."

The last pronouncement upon this question is *Bermes* v. *Kelley, 108 N. J. Eq. 289:*

"At default a mortgagee becomes entitled to possession of the mortgaged premises. That possession, if exercised, entitles him to receive the rents. Possession may be taken by the mortgagee either personally or through a receiver appointed by the court for that purpose in a suit to foreclose the mortgage. Unless and until that possessory right is exercised by a mortgagee, the mortgagor is entitled to the rents as against the mortgagee. As against the mortgagor, that possessory right and its fruits, if and when exercised, obtain in favor of any mortgagee, irrespective of the rank of the mortgage. As between two successive mortgagees, when one exercises his possessory right, either personally or through a re-

ceiver in foreclosure, and the other does not do so, the one exercising the right becomes entitled to the rents received by him through the medium of his possession."

It must follow that the mortgagee, upon taking possession by the appointment of a receiver, becomes entitled to all rents becoming due for premises included in the mortgage, notwithstanding the fact that the mortgagor, after the execution of the mortgage, had assigned such rents to another.