[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 311 
On appeal from a decree of the former Court of Chancery advised by Vice-Chancellor Bigelow, who filed the following opinion:
"This is a foreclosure suit involving a complicated account. While the proofs are vague and unsatisfactory, I hope to reach a conclusion that will do substantial justice to the parties.
"In 1936, Antonio Zanzonico, since deceased, mortgaged to Ella Mandelbaum two parcels of land in Newark, one at the corner of South Seventh Street and Fourteenth *Page 312 
Avenue, which I will call `Fourteenth Avenue,' and adjoining it on South Seventh Street, another lot that I will refer to as `Seventh Street.' Antonio was the owner of Fourteenth Avenue, but his title and the title of his mortgagee were subject to the interest of his wife Carmela, who did not join in the mortgage. Seventh Avenue was owned by Antonio and Carmela as tenants by the entirety. Mrs. Mandelbaum sold the mortgage to complainant June 15, 1938, but no assignment was executed until 1940, and then, by mistake of the scrivener, it read as an assignment to Antonio and not to complainant. The bill prays that the assignment be reformed and the proofs are clear on this point. However, Mrs. Mandelbaum is not a party to the suit and so I doubt if reformation can be decreed, but the same result can be reached in other ways. Complainant's title to the mortgage will be established.
"In 1937, to secure a debit of Antonio's, he and his wife mortgaged Fourteenth Avenue to complainant. This mortgage does not cover the lot held by the mortgagors as tenants by the entirety. Complainant assigned this mortgage to one Zuckerman in 1938, but repurchased it November 11, 1941.
"On July 27, 1938, Antonio mortgaged both lots to Allied Service Bureau, and again his wife did not join. This mortgage was assigned to complainant the following month.
"Now, as to the amount due. The Mandelbaum mortgage was given to secure $1,621.17, payable in two years with interest at six per cent. Complainant bought it for $1,125.17, but at the same time he took from Antonio an estoppel certificate that there was due on it $1,237.50, with interest from July 1, 1938. Two days before he purchased the mortgage, he paid Antonio $75 and there had been other dealings between the parties. I have no doubt that Antonio and complainant intended that any prior indebtedness should be secured by the mortgage and that the sum of $1,237.50 includes such indebtedness as well as the amount paid Mrs. Mandelbaum.
"Complainant has presented checks made by him to one Marx in the year beginning July, 1938, and totaling $588, and asks that they be taken into account. But since there is *Page 313 
no proof that they were loans to Antonio or have any connection with the case, they will be disregarded. Also, the $40 check to Philip Mandelbaum December 7, 1940. Three checks to the order of Antonio in July and August, 1938, aggregating $1,340, are the loan which is secured by the third mortgage. Complainant also produced other checks to Antonio and promissory notes made or endorsed by him. In the statement, exhibit C-15, complainant asserts a debt to him of $150 in connection with the notes. Three receipts for $180 in all, dated in the fall of 1940 and signed by complainant, will be taken as evidence of payment of any unsecured debt then owing by Antonio to complainant.
"Other receipts in evidence show that from July 3, 1938, to August, 1941, Antonio paid complainant a total of $1,090. Interest on the mortgage, the principal of which was reduced from time to time, was about $142.50 during the period and until November 1, 1941. So that the total payments were sufficient to pay interest to that date and reduce the mortgage principal to $290.
"The second mortgage was given to secure $1,000. When Mrs. Zuckerman re-assigned it to complainant in the fall of 1941, she warranted that there was due thereon $1,000 with interest at five per cent. from October 7, 1941. The third mortgage secured $1,340 with interest at six per cent. from August 15, 1938. As I have applied all of complainant's receipts to the first mortgage and to the open debt, I will consider that nothing was paid on account of the second and third mortgages. Then, on November 1, 1941, complainant took possession of both properties by virtue of his mortgages. There had been litigation between Antonio and Carmela, his wife, and an execution sale, the result of which was that Antonio was entitled to all the rents during their joint lives, not only from Fourteenth Avenue but also from Seventh Street which was owned by the parties as tenants by the entirety. Antonio's death occurred January 20, 1942, an event which brought a radical change in the situation, so we will strike a balance on that date. There were three buildings on the two lots, of which complainant took possession. In *Page 314 
them were one store and eleven apartments, one of which was occupied by Antonio, who paid no rent. Allowing for vacancies, rents should have been about $175 monthly, or, for three months, $525. Proof of complainant's actual receipts is wanting and I will charge him with this sum. On October 2, 1941, he had paid some tax arrears, and later he paid other taxes, water rents, and for certain repairs, and loaned Antonio $15, a total of $396.78. So his net receipts were $128.22. This sum will be applied to interest on the first mortgage to January 20th, and reduction of the principal to $165. After such application and on January 20, 1942, there was unpaid on the second mortgage $1,000 principal, plus accrued interest at five per cent., amounting to $14.30, and on the third mortgage the principal sum of $1,340 and accrued interest at six per cent., amounting to $261.50, or a total on all three mortgages of $2,780.80.
"An ejectment action in the Supreme Court eventually established that the widow Carmela, from the death of her husband, was entitled to Seventh Street free and clear of complainant's mortgages. He, however, remained in possession thereof, as well as Fourteenth Avenue, until June 1, 1945. He is acountable to her for all rents which he collected or should have collected during the three years and four months following the death of her husband, and is entitled to credit for all proper expenses in connection with the property. Carmela, as dowress, also has a right to one-half the rents of Fourteenth Avenue subsequent to January 20, 1942. She joined in the second mortgage but not the first or third, and so her share of the rents may be applied to interest or principal of the second mortgage as between her and complainant. But as between her and the estate of her deceased husband, she is entitled to exoneration from the mortgage, and therefore whatever is taken from her half of the net rents to pay the mortgage, creates a charge in her favor as against the estate. The estate's share of the rents is applicable to the satisfaction of the three mortgages, and will be applied against them in order of priority. Since it will appear that the rents were sufficient to pay the first and second mortgages in full, *Page 315 
complainant will be accountable to the widow for her share of the rents above the amount required for one-half of the second mortgage.
"Complainant has presented three exhibits, C-14, 15 and 16, purporting to show his receipts and disbursements as mortgagee in possession. The rents are shown by properties but with no details as to dates or tenants. For Seventh Street, which was a three-family house, he shows receipts of $2,112, which appears to me a reasonable sum. Of this amount, I have charged him with $157 for the period before Antonio's death, leaving $1,955 collected thereafter, for which he is accountable to Carmela. Complainant claims disbursements on both properties of $4,669.24. I have already given him credit for $381.78, part of the sum claimed for the period before Antonio's death. Alleged disbursements in the sum of $1,602.01 I have disallowed, leaving disbursements approved $2,685.45, of which I allocate $631.72 to Seventh Street and $2,053.73 to Fourteenth Avenue. Annexed to this memorandum is a schedule showing the disbursements disallowed and the allocation of the remaining disbursements. Crediting complainant with the sum of $631.72, it appears that he is indebted to Carmela in the net sum of $1,323.28, with interest from June 1, 1945.
"On Fourteenth Avenue were two structures, one containing a store and two apartments, and the other, a six-family tenement house. During the period that complainant had possession, the Tenement House Commission ordered the six-family house emptied because of insufficient fire escapes and other defects. It was empty a couple of years until complainant surrendered possession, and during that period was greatly damaged by vandals. Had it not been for this happening, reasonable rents for the two properties from November 1, 1941, to June 1, 1945, would have been about $5,000. Complainant charges himself with only $4,148. The question of waste arises and is dealt with below. Meanwhile, I will charge complainant with receipts of $4,500, of which $368 has been charged against the period prior to February 20, 1942, leaving $4,132 for the period in question. From this *Page 316 
must be deducted the expenses of $2,053.73, leaving net receipts of $2,078.27, of which the widow's share is $1,039.13.
"The amount due on the second mortgage at the beginning of this stage of the account was $1,014.30. Let us say that an additional $50 interest accrued on the mortgage, making a total payable on this mortgage $1,064.30, half of which, or $532.15, is chargeable against Carmela's share of the rents. Complainant is indebted to her for her share of the rents of Fourteenth Avenue, in the sum of $506.98, with interest from June 1, 1945.
"Out of the estate's share of the rents, $1,039.14, appropriate in satisfaction of the first and second mortgages, $166 and $532.15, and for payments to Masucci, $150, and to Wiener 
Stanziale, $250, pursuant to the Orphans' Court order. This results in an over-appropriation of $59.01. There was due on the third mortgage at the beginning of the period $1,340 principal, together with accrued interest of $261.50. During the period, there accrued further interest of $267, making $1,868.50 principal and interest. Adding $59.01 gives $1,927.51 due complainant June 1, 1945, before considering the subject of waste.
"A mortgagee who goes into possession of the mortgaged lands assumes a grave responsibility for the management and preservation of the property. It is notorious that in Newark untenanted property is apt to be wrecked by vandals. When the tenants in the six-family house vacated the premises on the order of the public authorities, complainant could have surrendered the house to Antonio's devisee Michael, or he could have made the necessary repairs and alterations and charged the cost against future rents. But he did neither; he allowed the house to remain empty and took inadequate means to protect it. He is liable for the resulting damage. This sum is not the full expense of rehabilitation, for a considerable sum must have been spent on the property in any event and some injury could not be avoided. I assess the damages at $2,500, from which must be deducted the sum of $1,927.51 due complainant. The balance is $572.49 with interest from June 1, 1945, due by complainant to Michael. *Page 317 
"Michael was bound to protect Carmela's dower against the mortgage debt. Hence, he is liable to her for so much of her share of the rents as was used to pay the mortgage, $532.15. He may offset the decree of Antonio against Carmela for $155.08 and costs of $40.30, with interest from December 6, 1938, to June 1, 1945, making $270.96. The balance which Michael owes Carmela on this score is $261.19. Let this be deducted from the sum which complainant owes Michael and added to what complainant owes Carmela.
"The result thus far is that all the mortgages have been paid and complainant is indebted to Carmela in the sum of $2,091.45 and to Michael in the sum of $311.30, with interest as aforesaid.
"The bill of complaint shows two docketed judgments, one in favor of Adonizio, administratrix, against Pietro Peses and Antonio Zanzonico, for $292 and costs, April 15, 1937; the other for Paolercio against Carmela and Michael, executors, for $427.61, May 23, 1944. A decree pro confesso was taken against both creditors. For their protection, the money owed to Michael by complainant should be paid into court, or Michael may apply for an execution on notice to the judgment creditors. There has also been paid into court $927.30 rents, collected in 1945. Either creditor or Michael or Carmela may petition for distribution of this money on notice to the other three.
"Carmela counterclaims for assignment of her dower out of rents of Fourteenth Avenue. Her dower up to June 1, 1945, is above provided for. Pending the suit, Michael sold the land subject to her dower, to T.R. Realty Co., and that company has rehabilitated and improved the property. It has entered an appearance in the suit. The widow is entitled to dower out of the property as it was at her husband's death. If the Realty Company has made it more valuable than it was then, it can amortize the reasonable cost thereof over the expected life of the improvements, say 30 years, and make an annual charge thereof in determining the net income. There are insufficient proofs to enable me to make a decree on this feature of the case. Let counsel for the Realty Company *Page 318 
and for Carmela attempt to agree on an account for the period since June 1, 1945, and on a formula for the future. If they cannot do so, they should move promptly for a reference to a master. And in any event, they should now take a partial final decree for the matters hereinabove determined. Please check my figures for errors in the calculations. Or for items I have overlooked or plainly misunderstood."
The decree under review is affirmed for the reasons expressed in the opinion of Vice-Chancellor Bigelow.
For affirmance — Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON — 5.
For reversal — None.