750 A.2d 238 (1999)
330 N.J. Super. 654
UNITED NATIONAL BANK etc., Plaintiff,
v.
Gary PARISH a/k/a Gary Parish; O'Conco, Inc.; Michael Avalone; and PNC Bank, N.A., Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County.
Decided December 3, 1999.
Law Offices of Ralph P. Ferrara, P.C. (Michelle S. Kirmser, appearing), for plaintiff United National Bank.
Newman & Simpson (Michael S. Hanusek, appearing), for defendant PNC Bank, N.A.
No other appearances.
FISHER, P.J.Ch.
Plaintiff United National Bank ("UNB"), the first mortgagee, seeks disgorgement of the rents that defendant PNC Bank ("PNC"), the second mortgagee, obtained after taking possession of the property owned by the mortgagor, but before UNB affirmatively asserted its rights. Because the priority a first mortgagee otherwise enjoys does not apply to income and profits due the mortgaged property, PNC may retain the rents it collected before UNB filed its foreclosure action and asserted its rights.
PNC filed its foreclosure action on April 18, 1999 and, pursuant to an assignment of rents obtained from the mortgagor, began collecting rents in May 1999. UNB did not file this foreclosure action until August 17, 1999. By that time, PNC had collected four monthly payments from mortgagor's tenant in the amount of $7000 each. UNB, the first mortgagee, has now moved for the entry of an order which would (1) require PNC to disgorge those rents received previously and (2) appoint a rent receiver. PNC does not object to the second aspect, recognizing that upon asserting its rights, UNB possessed priority as to future rents and profits. But, as noted previously, PNC does object to turning over the prior rents.
*239 A number of decisions from the courts of this State, not surprisingly emanating from the era of the Great Depression, dealt with this particular problem. See, Berman v. One Forty-Five Belmont Ave. Corp., 109 N.J.Eq. 256, 156 A. 830 (Ch.1931), aff'd o.b. 112 N.J.Eq. 171, 163 A. 893 (E. & A.1933); Westinghouse Elec. & Mfg. Co. v.. Weikel, 110 N.J.Eq. 347, 353-354, 160 A. 48 (Ch.1932), aff'd 112 N.J.Eq. 173, 163 A. 893 (E. & A.1933); Sosnick v. Jesieski, 110 N.J.Eq. 267, 159 A. 630 (Ch.1932); Bermes v. Kelley, 108 N.J.Eq. 289, 154 A. 860 (Ch.1931).[1] The Vice-Chancellors in all those matters concluded that the second, or junior, mortgagee who is quicker to pursue its remedies is entitled to retain such rents or profits. As good a description as any of the respective rights of such mortgagees and the mortgagor is the following:
As between the two, first mortgagee on the one hand, and on the other a junior lienor ... the equitable balance is even, so far as income is concerned. Priority as to lien the first mortgagee has, nor does he forfeit it by delay in foreclosing; but priority as to rents and profits he has not, because he left the mortgagor in possession. If he chooses to foreclose, of course, the first mortgagee should have priority as to rents not yet collected, but he must claim it by way of motion for the appointment of his own receiver.... [T]he fundamental point is that as between the two interests, senior and junior, the former is entitled to demand a receivership of income only from the time when he asserts his right, by commencing foreclosure and demanding the segregation of income. The rule applies regardless of whether the first mortgagee's opponent is the receiver appointed in the suit of a junior lienor, or is a trustee in bankruptcy or other representative of creditors. The first mortgagee, therefore, must assert his right or he will lose it; and income meanwhile collected by the junior lienor's receiver is water over the dam.gone beyond recall.

Glenn on Mortgages (1943), § 178.1 at pages 933-935 (emphasis added). See also, N.Y. Life Ins. Co. v. Fulton Development Corp., 265 N.Y. 348, 193 N.E. 169 (1934). While the Depression era cases appear to be the most current declarations in this State on the subject, the doctrine as described in the decisions cited above has never been discredited or questioned in this or other jurisdictions and there is no reason to depart from this well-settled rule.
UNB does not question those decisions but rather suggests that because the rent receiver for the junior mortgagee in those cases came about by way of court order those decisions are somehow distinguishable from the present situation. Certainly that is a factual distinction between those decisions and this case, but there is nothing about the holdings of those courts or the salutariness of the rule espoused which would suggest that this distinction was a controlling feature in those cases.[2] In fact, Vice-Chancellor Leaming's dissertation on the subject strongly suggests that a court ordered appointment of a receiver is not the critical fact in the analysis; rather, it is possession that governs:
At default a mortgagee becomes entitled to possession of the mortgaged premises; that possession, if exercised, entitles *240 him to receive the rents. Possession may be taken either personally or through a receiver appointed by the court for that purpose in a suit to foreclose the mortgage. But unless and until that possessory right is exercised by a mortgagee, the mortgagor is entitled to the rents as against the mortgagee. As against the mortgagor, that possessory right and its fruits, if and when exercised, obtains in favor of any mortgagee, irrespective of the rank of the mortgage. As between two successive mortgagees it necessarily follows that when one exercises his possessory right, either personally or through a receiver in foreclosure, and the other does not do so, the one exercising the right becomes entitled to the rents received by him through the medium of his possession. This must be so, because a mortgagee who does not exercise his possessory right acquires no right to receive the rents.
Bermes, supra, 108 N.J.Eq. at 290-291, 154 A. 860 (emphasis added).
Nor, as UNB argues, is there something about the loan documents which would override the common law doctrine described above. In that regard, UNB observes that the assignment of leases it obtained from the mortgagor on January 24, 1994 was recorded on February 8, 1994. PNC's assignment of leases was not recorded until March 10, 1997 and, in light of this sequence of events, UNB asserts that PNC was constructively advised of UNB's prior assignment and, thus, not entitled to any rents received. While this sequence of recordings is demonstrably true, it is also beside the point. The assignment given to UNB was not triggered until a default in the mortgagor's obligations and, as the authorities referred to above demonstrate, the right to collect the rents does not arise until the appointment of a receiver or the mortgagee's taking of possession. Bermes, supra. There was no default by the mortgagor until April 1999, i.e., after PNC obtained its assignment of leases. Indeed, even if the dates of the recording of these assignments and the date of the default were different, the court can see no reason why the well-recognized doctrine that the first in time to collect the rents is the first in right to those rents should not be followed.
As PNC correctly observes, it should not be deprived of the remedy it obtained for itself through the exercise of diligence.[3] If PNC had not collected the rents between April and August 1999, then the mortgagor would have collected them and neither creditor would have been compensated. Certainly equity aids the vigilant and not those who sleep on their rights. UNB should not be rewarded for having slumbered between April and August 1999 while PNC diligently sought to receive the rents due on the property. Zucker v. Silverstein, 134 N.J.Super. 39, 52, 338 A.2d 211 (App.Div.1975).
An order will be entered appointing a rent receiver and denying plaintiff's motion for a disgorgement of the rents PNC received until the filing of this motion.

ON MOTION FOR RECONSIDERATION[4]
After the issuance of the above opinion, UNB moved for reconsideration, arguing the court overlooked its contention that PNC should be required to pay the municipal taxes which accrued on the property from the rents collected. UNB *241 is correct and the motion will be granted and the prior order modified.
The facts and circumstances relevant to the matter have been fully described in the court's opinion of December 3, 1999. In essence, between the mortgagor's default and UNB's foreclosure action, PNC (the second mortgagee) had taken possession of the property and collected rents. Previously, UNB argued unsuccessfully that PNC was obligated to disgorge those rents to UNB. UNB had also argued that PNC should be obligated to pay the taxes on the property during the time it was in possession. The court's earlier decision failed to resolve the tax issue and UNB has requested the court's ruling on that interesting issue. Certainly, UNB is correct that the court should "reconsider" the matter pursuant to R. 4:49-2. Despite PNC's contrary argument, the court did in fact "overlook" the argument regarding taxes and will consider that issue on its merits.
As recognized in the earlier opinion, PNC had a right to retain the rents collected before UNB asserted its rights. Whether PNC had a concomitant right to pay outstanding taxes during its time of possession of the property is the question now to be determined. The papers submitted by the parties, and the sparse authorities cited, demonstrate that the question is not free from doubt. It has been stated in the cases cited by the parties that generally a mortgagee in possession, such as PNC, "assumes a grave responsibility for the management and preservation of the property." Zanzonico v. Zanzonico, 2 N.J. 309, 316, 66 A.2d 530 (1949), cert. denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949); Essex Cleaning v. Amato, 127 N.J.Super. 364, 366, 317 A.2d 411 (App.Div.1974); McCorristin v. Salmon Signs, 244 N.J.Super. 503, 509, 582 A.2d 1271 (App.Div.1990). In Essex Cleaning, the court said "the duty of a mortgagee in possession is that of a provident owner." 127 N.J.Super. at 366, 317 A.2d 411. While this broad language might suggest an obligation on the part of the mortgagee in possession to pay taxes as they accrue on the property, the context within which these statements were made must be examined.
In Zanzonico, the court used the words quoted above[5] in determining that a second mortgagee would become liable for damages to the property while in possession.[6] Similarly, in McCorristin, the court found a mortgagee in possession had standing to sue for damage to the property. 244 N.J.Super. at 509-510, 582 A.2d 1271. See also, Cunningham & Tischler, Law of Mortgages, 30 New Jersey Practice § 195 at p. 38. Somewhat more apposite, Essex Cleaning held that "a mortgagee in possession may be liable for the services rendered to him in connection with the property during his occupancy thereof on the basis of an express or implied contract." 127 N.J.Super. at 367, 317 A.2d 411. See also, Osborne, Law of Mortgages (2d ed., 1970) at p. 283[7]; Cunningham & Tischler, supra, § 195 at p. 38-39. In *242 addition, the law recognizes that a mortgagee in possession has a duty to make repairs other than those made necessary by ordinary wear and tear. Shaeffer v. Chambers, 6 N.J.Eq. 548 (Ch. 1847); Cunningham & Tischler, supra, § 195 at 39. A mortgagee in possession may also be subject to prosecution by local governmental authorities for the failure of the mortgaged property to conform to housing codes, health and safety ordinances and other similar regulations. Cunningham & Tischler, supra, § 195 at p. 48.[8] Essentially, the authorities appear to view the obligations of a mortgagee in possession as similar to those of the mortgagor with respect to the preservation of, and responsibility for, the property. But, see, Briglia v. Mondrian Mortgage Corporation, 304 N.J.Super. 77, 698 A.2d 28 (App.Div.1997) (sidewalk liability not applicable to a mortgagee in possession), certif. denied 152 N.J. 13, 702 A.2d 352 (1997) overruling Colarte v. Federal National Mortgage Association, 298 N.J.Super. 525, 689 A.2d 869 (Law Div.1996).
The decisions referred to above, while declaring an obligation on the part of the mortgagee in possession to pay certain obligations which come due on the property from the collected rents, did not precisely deal with accruing taxes. However, Merchants' & Traders' Realty Co. v. Stern, 101 N.J.Eq. 629, 138 A. 697 (Ch.1927), aff'd 102 N.J.Eq. 290, 140 A. 390 (E. & A.1928), which was not cited by either party, does so hold. Therein, Vice-Chancellor Berry stated the recognized rule as requiring the application of the rents collected to any taxes accruing while the mortgagee is in possession. 101 N.J.Eq. at 633, 138 A. 697.[9] Other cases, both before and after Merchants, also recognize such an obligation. See, Brown v. Berry, 89 N.J.Eq. 230, 235, 108 A. 51 (E. & A.1918)[10]; Shields v. Lozear, 22 N.J.Eq. 447, 453 (Ch.), aff'd 23 N.J.Eq. 509 (E. & A. 1871); South Amboy Trust Co. v. McMichael Holdings, 141 N.J.Eq. 12, 56 A.2d 437 (Ch.1947).
While the amount of case law or other authority on the subject is somewhat scant, there certainly is common sense to the rule recognized in Merchants. Again, all the rules applicable to mortgagees in possession referred to above, and elsewhere, emanate from the notion that the mortgagee in possession is bound to the actions of a "provident" or "prudent" mortgagor. Certainly, a mortgagor would be expected and required to pay taxes as they accrue on the property. If a mortgagee, even a junior mortgagee, takes possession of the premises, and is to have the benefit of the rents on the property, it is equitable that the taxes which accrue during that period of time should be paid from the collected rents.
Accordingly, an order will be entered amending the prior order. PNC will be required to pay the taxes which became both due and payable while PNC was in possession of the mortgaged property to the extent the rents collected are sufficient to bear that expense.
NOTES
[1] As Vice-Chancellor Leaming said in Bermes, "[c]ontroversies of this general nature have been before the courts of this state so frequently and in so many aspects that it is not thought that any doubt can be said to exist touching the question here presented." 108 N.J.Eq. at 290, 154 A. 860.
[2] Indeed, UNB's argument that with the recording of its assignment of leases it needed to take no further action to perfect its interest in those rentswhile apparently true, see, N.J.S.A. 46:21-1; In re Princeton Overlook Joint Venture, 143 B.R. 625 (Bankr., D.N.J.1992)only demonstrates that PNC was well within its rights to take possession and obtain the rents without court order. If UNB's rights were perfected solely through the recorded instrument, then why were PNC's rights not similarly perfected?
[3] There is nothing unusual about UNB's less rapid action from the standpoint of the second mortgagee. UNB's inaction could very well have, in PNC's eyes, warranted "the implication that [the first mortgagee] considered the mortgaged lands and premises adequate security for its mortgage debt." Sosnick, supra, 110 N.J.Eq. at 269, 159 A. 630.
[4] The following opinion was issued on January 10, 2000. This and the prior opinion have been combined for purposes of publication.
[5] The quote is actually from the opinion of Vice-Chancellor Bigelow in the trial court. The Supreme Court affirmed for the reasons expressed in that opinion. 2 N.J. at 318, 66 A.2d 530.
[6] Vice-Chancellor Bigelow stated: "It is notorious that in Newark untenanted property is apt to be wrecked by vandals. When the tenants in the six-family house vacated the premises on the order of the public authorities, complainant could have surrendered the house to Antonio's devisee Michael, or he could have made the necessary repairs and alterations and charged the cost against future rents. But he did neither; he allowed the house to remain empty and took inadequate means to protect it. He is liable for the resulting damage." 2 N.J. at 316, 66 A.2d 530 (emphasis added).
[7] "When a mortgagee goes into possession questions as to his personal liability arising out of his relations with third parties arise. Since he is the person in possession of the premises he is personally liable in tort for injuries resulting either through his actionable fault in utilizing the property or by reason of his failure to perform duties imposed by law upon the owner of the land. Even more clearly he is liable for goods and services furnished to him during his occupancy." Cited with approval, and with the emphasis provided above, in Essex Cleaning, supra, 127 N.J.Super. at 367, 317 A.2d 411.
[8] The following observations, without citation, were related in the treatise cited above: "Tenants of mortgaged property in the core cities frequently remove fixtures, plumbing, etc., and then file complaints against the mortgagees in possession. In some cases, mortgagees in possession have been fined even though they have been unable to collect the rents or have been compelled to expend sums in excess of the mortgage debt for repairs made necessary by such vandalism." Cunningham & Tischler, supra, § 195 at p. 48 n. 57.
[9] "[H]e was obliged to pay subsequent taxes and municipal liens in consideration of his right of occupancy of the premises and his right to the rents and profits." 101 N.J.Eq. at 633, 138 A. 697.
[10] "We have seen that Brown entered into possession in 1878 as mortgagee. He was bound to pay the taxes." 89 N.J.Eq. at 235, 108 A. 51.