**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0110-21

LINDA CLARK,

    Plaintiff-Appellant,

v.

CITY OF WILDWOOD,

    Defendant-Respondent.

_____

Submitted May 9, 2022 – Decided August 9, 2022

Before Judges Accurso, Rose and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0087-20.

Jarve Kaplan Granato Starr, LLC, attorneys for appellant (Adam M. Starr and Edward M. Costello, III, on the brief).

Birchmeier & Powell LLC, attorneys for respondent (Erin R. Thompson, on the brief).

PER CURIAM

Plaintiff Linda Clark appeals from the August 31, 2021 order granting summary judgment in favor of defendant City of Wildwood and dismissing with prejudice plaintiff's complaint for failure to satisfy the requirements of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 14.4.  We affirm.

I.

We view the evidence in the light most favorable to plaintiff.  Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

The Wildwood boardwalk is owned and maintained by defendant.  It spans approximately two miles and is comprised of wooden boards.  There are two concrete lanes in the middle of the boardwalk where tram cars operate.

On August 3, 2018, at around 9:30 p.m., plaintiff was walking on the Wildwood boardwalk, and because she knew the boards were "sometimes . . . uneven," she opted to walk on the concrete.  When a tram car approached, she transitioned from the concrete onto the wooden boards.  As she did so, her right shoe struck the edge of the boards, causing her to trip and fall.  Plaintiff extended her right arm to break the fall and landed on her right side.

A Wildwood police officer responded to the incident and photographed the area.  While waiting for paramedics, plaintiff observed "three or four" boards

near the site of her fall "starting to bow down and . . . the edges were sticking up."  She failed to notice the elevated boards before she fell "because [she] was trying to get out of the way of the tram[]car and wasn't looking down."

Based on the medical treatment plaintiff received after her fall, she was diagnosed as suffering from a complete tear in her right rotator cuff.  In October 2018, plaintiff underwent arthroscopic surgery to repair her rotator cuff.  Some five months after surgery, a physician's assistant noted plaintiff had "good [range of] motion and strength" in her shoulder and expressed "[n]o complaints" about her condition.  Thus, she could resume her activities.

In March 2020, plaintiff filed a complaint against defendant, seeking damages for her injuries.  She alleged she experienced continued discomfort, particularly when lifting objects over ten pounds or using her right arm in a repetitive motion.  She also averred she had trouble performing certain routine tasks, such as operating a lawn mower, carrying her grandson, and writing for extended periods of time.

Plaintiff provided a narrative report from a doctor detailing her diagnosis, treatment and prognosis, which stated, in part:

> [Plaintiff] . . . was able to lift the arm overhead following [surgery].  However, the rotator cuff can lead to long-term disability such as weakness, loss of range of motion, and future re-tearing.  Rotator cuff tears[,]

especially massive tears[,] . . . have been linked with the development of post[-]traumatic arthritis and cuff tear arthropathy. [Plaintiff] may require further treatments in the future which could include injections, further physical therapy, and further surgeries . . . .

In May 2021, nearly three years after her injury, plaintiff's expert, Scott D. Moore, inspected the accident site and prepared a forensic report. By then, the wooden board at the site of plaintiff's fall had been replaced. Thus, Moore only inspected the condition of nearby unreplaced boards. He determined the height differential between those boards and the concrete tram path ranged from 9/16 to 5/8 inches. Further, he concluded: some boards "had buckled" and instead of replacing the boards, defendant "ground [down] and reattached the boards"; an "entire row of boards . . . [was] rotted and raised along the edge of the abutting . . . concrete"; and paint seen "on boards at a nearby similar area indicate[d] . . . the area had been inspected, painted over, and specifically not repaired." Moore opined, "the height of the defect at the time of [plaintiff's] incident[] was greater than 5/8 inch. Thus, . . . the defect was well over the allowed vertical height differential between walking surfaces and qualified as a tripping hazard."

During discovery, defendant confirmed its procedure for inspecting the boardwalk:

Each morning the Wildwood Sanitation Department picks up trash on the . . . boardwalk and inspects the boardwalk for any defects. The Wildwood Public Works Department employs carpenters that ride and inspect the boardwalk from 7:00 a.m. until 2:00 p.m., Monday through Friday. The carpenters are equipped to make immediate repairs and/or maintenance of the boardwalk. If police officers and/or Wildwood employees observe any defective condition of the boardwalk, they immediately report it.

Wildwood also certified it

ha[d] no personal, actual, and/or constructive notice of any defective condition of the boardwalk that existed on . . . August 3, 2018 [in the area of plaintiff's fall]. Wildwood maintains maintenance records for the boardwalk and they do not reflect any defective condition existing [in the area of plaintiff's fall].

During the deposition of defendant's boardwalk inspector, he testified that throughout the summer, from Monday to Friday, two or three carpenters surveil the Wildwood boardwalk to inspect and repair defects. The inspector also stated when Sanitation Department workers empty trash cans, they report defects noted, and police officers fill out a "kick sheet" to prompt an inspection if they notice unsafe conditions on the boardwalk. The inspector testified he was not aware of any kick sheet being sent to his office after plaintiff's accident.

Based on these undisputed facts, Judge James H. Pickering, Jr. granted defendant's motion for summary judgment. Citing N.J.S.A. 59:4-2 and

5

<u>Vincitore v. N.J. Sports & Exposition Auth.</u>, 169 N.J. 119, 124 (2001), the judge stated that to demonstrate defendant was liable for plaintiff's injuries, she needed to show:

> (1) That the property was in a dangerous condition at the time of the injury,
>
> (2) That the injury was proximately caused by the dangerous condition,
>
> (3) That the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred,
>
> (4) That either[:]
>
>> (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of . . . employment created the dangerous condition, or
>>
>> (b) a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition, and
>
> (5) the action the entity took to protect against the condition or the failure to take such action was palpably unreasonable[.]

Judge Pickering analyzed these elements based on the facts presented and determined "no reasonable fact finder could conclude that the area of the boardwalk where [p]laintiff tripped was a 'dangerous condition' within the

6

meaning of N.J.S.A. 59:4-1." Further, the judge concluded defendant had no "actual or constructive notice of the alleged dangerous condition within the meaning of N.J.S.A. 59:4-3"; "[t]he actions or inactions of the City of Wildwood were not palpably unreasonable"; and "[p]laintiff's injuries do not rise to the threshold level of compensation that is set forth in [N.J.S.A.] 59:9-2(d)."

Regarding whether the boardwalk was in a dangerous condition on the night of the incident, the judge specifically found

> a photo was taken by the responding police officer on the night of the incident, but the photograph does not provide any insight as to the height differential between the boards and the concrete where [p]laintiff tripped. At the time [p]laintiff's expert went to examine the boards, almost three years after the incident occurred, all the boards in that area had been replaced. . . . However, the expert reported . . . the actual height differential between the boards and the concrete on the night [p]laintiff fell was around 9/16 to 5/8 inches.

Finding "the raised board did not amount to a dangerous condition," as defined under N.J.S.A. 59:4-1(a),[1] the judge explained:

> [m]inor dips and bumps on a boardwalk [are] commonplace. Plaintiff herself admitted that she understood the boardwalk to have minor bumps and dips. . . . She clearly knew that the transition between the concrete lane and the boards could also be

---

[1] N.J.S.A. 59:4-1(a) defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

uneven. . . . [T]he uneven boards where [p]laintiff tripped were in fact minor, trivial, or insignificant and not a dangerous condition. This is the type of minor defect that is not considered 'substantial' under the statute.

Judge Pickering also addressed the element of notice, citing N.J.S.A. 59:4-3, and determined plaintiff "provided no evidence . . . [d]efendant had actual notice of what she alleges was a dangerous condition." Additionally, he found defendant had no constructive notice of the dangerous condition, reasoning,

the boardwalk that [d]efendant inspects on a daily basis is two-miles in length . . . . The court understands that there are two concrete lanes, and that boards abut the concrete lanes on both sides of each lane, meaning there are four sides where the boards abut the concrete. That is eight miles where the boards abut concrete. It is unreasonable to think that every minor defect could be identified by staff and remedied immediately.

. . . .

Any defects that might occur to the boardwalk [are] not 'predictably recurrent' as they occur in different places throughout the two-mile strip. General knowledge of any defects or that the boards could become defective is not enough to impute constructive notice on [d]efendant . . . . Plaintiff has not presented evidence that the inspectors or staff were defective or deficient in how they inspected the boards, or that it is a common occurrence . . . they miss defects.

Turning to whether defendant's actions or inactions were "palpably unreasonable," the judge quoted Charney v. City of Wildwood, 732 F.Supp. 2d

8

448, 458 (D.N.J. 2010), stating, "[i]mperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably unreasonable." Mindful of this standard, Judge Pickering concluded plaintiff had "not produced any evidence that the actions of [d]efendant were palpably unreasonable."

Finally, in addressing plaintiff's injuries, the judge found they did "not rise to the threshold level of compensation . . . set forth in N.J.S.A. 59:9-2(d)."[2] He reasoned plaintiff failed to prove she

> suffered any permanent disability from her surgery. . . . [T]here is no medical documentation that [p]laintiff has suffered any permanent range of motion problems. Plaintiff's doctor has only stated that this type of injury could lead to some weakness or problems with range of motion. The statute, however, does not provide for compensation on the possibility that future problems could occur. It requires "permanent loss". . . .
>
> Plaintiff's other complaints are that she can't carry her grandson for an extended time, has trouble

---

[2] N.J.S.A. 59:9-2(d) provides, in pertinent part:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. . . .

with groceries, and can't mow her own lawn.  The court does not find that these issues evidence substantial permanent loss of a bodily function.  The law does not allow for recovery for pain and discomfort when an individual's limitations are minor.

## II.

On appeal, plaintiff reprises the arguments she raised before the trial court, contending she presented sufficient evidence to show there was a dangerous condition on the boardwalk; defendant had constructive notice of the condition; defendant's failure to correct the defect was palpably unreasonable; and the judge erred in finding her injuries "did not rise to the threshold level of compensation set forth in N.J.S.A. 59:9-2."  We disagree.

In reviewing a grant of summary judgment, we apply the same standard under Rule 4:46-2(c) that governs the trial court.  Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016).  We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether the moving party was entitled to judgment as a matter of law.  IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill, 142 N.J. at 540).

A motion for summary judgment will not be defeated by bare conclusions lacking factual support, Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132

10

(App. Div. 2011), self-serving statements, Heyert v. Taddese, 431 N.J. Super. 388, 413-14 (App. Div. 2013), or disputed facts "of an insubstantial nature," Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2022). "Competent opposition requires competent evidential material beyond mere speculation and fanciful arguments." Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009) (internal quotation marks and citations omitted).

It is well-settled "the 'guiding principle' of the [TCA] is 'that immunity from tort liability is the general rule and liability is the exception.'" D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005)). Accordingly, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo, 209 N.J. at 65 (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). "[T]he mere happening of an accident on public property is insufficient to impose liability upon a public entity." Wilson v. Jacobs, 334 N.J. Super. 640, 648 (App. Div. 2000).

Guided by these principles, we discern no basis for disturbing the August 31 order, and affirm substantially for the reasons set forth in Judge Pickering's thorough written opinion. We add the following comments.

N.J.S.A. 59:4-2 prescribes when a public entity may be liable for a dangerous condition on public property:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> > a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his [or her] employment created the dangerous condition; or
> >
> > b. a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

A-0110-21

As Judge Pickering rightly noted, it was plaintiff's burden to establish the elements outlined under N.J.S.A. 59:4-2 to show defendant was liable for her injuries. We agree with the judge she failed to meet this burden.

The TCA defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a) (emphasis added). Our Supreme Court has defined "substantial risk" as "one that is not minor, trivial or insignificant." Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985). Thus, even if the risk is foreseeable, it still may not rise to the threshold of dangerousness required to satisfy this requirement.

Based on our jurisprudence, and viewing the facts most favorably to plaintiff, we conclude, as did Judge Pickering, that no reasonable jury could find the alleged slight change in elevation on a single board in a long stretch of boardwalk gave rise to a "substantial risk of injury." See, e.g., Wilson, 334 N.J. Super. at 648-49 (upholding summary judgment for municipality where there was a noticeable gap between sidewalk pavers because this did not constitute a dangerous condition).

A-0110-21

Even if this were not the case, we also agree with Judge Pickering's determination plaintiff failed to show defendant's action in protecting against a dangerous condition was "palpably unreasonable."

"Although ordinarily the question of whether a public entity acted in a palpably unreasonable manner is a matter for the jury, in appropriate circumstances, the issue is ripe for a court to decide on summary judgment." Polzo, 209 N.J. at 75 n.12 (citations omitted).  The "palpably unreasonable" standard is beyond ordinary negligence.  "[T]he term implies behavior that is patently unacceptable under any given circumstance." Kolitch, 100 N.J. at 493. Indeed, "for a public entity to have acted or failed to act in a manner that is palpably unreasonable, 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'"  Ibid. (quoting Polyard v. Terry, 148 N.J. Super. 202, 216 (Law Div. 1977), rev'd on other grounds, 160 N.J. Super. 497 (App. Div. 1978), aff'd o.b., 79 N.J. 547 (1979)).  We have stated that "[t]he test requires consideration of what the [public entity] did in the face of all of the attendant circumstances, including, of course, the extent of the known danger and what it considered to be the need for urgency." Schwartz v. Jordan, 337 N.J. Super. 550, 555 (App. Div. 2001).

In Polzo, the Court looked at a complaint in the death of a bicyclist who had fallen on "a circular depression" on the shoulder of a county road. 209 N.J. at 56-57. Noting that the county was responsible for maintaining an extensive network of roads, including the shoulder where the accident occurred, and that there were no prior complaints about injuries at the site, as well as the fact that the shoulder was generally intended to be used for vehicular travel, the Court concluded the county's failure to locate and fix the depression could not be considered "palpably unreasonable." Id. at 77-78. See also Carroll v. N.J. Transit, 366 N.J. Super. 380, 387-89 (App. Div. 2004) (finding no "palpably unreasonable" conduct when plaintiff did not present proof of inspection standards and there was no history of similar complaints that would suggest a need for more frequent inspections of the area).

Here, aside from the fact plaintiff presented no evidence defendant had actual or constructive notice of the condition of the board at issue prior to her fall, she failed to raise a genuine issue of material fact as to whether defendant's action or inaction was "palpably unreasonable." As we have discussed, it was unrefuted the boardwalk is patrolled five days a week by certain employees who are tasked with looking for defects, while other employees monitor the condition of the boardwalk and report defects to the boardwalk inspector so they can be

15

repaired. Also, nothing in the record suggests defendant should have known to check the area where plaintiff fell, as plaintiff presented no proof of similar accidents in the vicinity. Thus, we are satisfied Judge Pickering correctly found defendant's inspection scheme was not palpably unreasonable.

Finally, while plaintiff failed to establish liability under the TCA, for the sake of completeness, we also observe her proofs did not satisfy the verbal threshold under N.J.S.A. 59:9-2(d); see also Nieves v. Adolf, 241 N.J. 567, 580 (2020). To vault the threshold, assuming a plaintiff can establish liability against a public entity, the TCA requires a plaintiff to establish: "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Kahrar, 171 N.J. at 12 (quoting Gilhooley v. Cnty. of Union, 164 N.J 533, 541 (2000)).

Here, although the narrative report submitted by plaintiff's doctor noted plaintiff's type of injury "can lead to long-term disability such as weakness, loss of range of motion, and future re-tearing," we agree with Judge Pickering that plaintiff failed to prove she "suffered any permanent disability from her surgery" or "suffered any permanent range of motion problems." As the judge correctly noted, "[t]emporary injuries, no matter how painful and debilitating, are not recoverable" and "a plaintiff may not recover under the [TCA] for mere

16

'subjective feelings of discomfort.'" <u>Brooks v. Odom</u>, 150 N.J. 395, 403 (1997) (quoting <u>Ayers v. Twp. of Jackson</u>, 106 N.J. 557, 571 (1987)). Thus, plaintiff failed to vault the verbal threshold to sustain a claim under the TCA.

In sum, we perceive no basis to disturb Judge Pickering's August 31 order. To the extent we have not addressed plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0110-21