252 N.J. Super. 434 (1991)
599 A.2d 1304
DOLORES AVALLONE, PLAINTIFF-APPELLANT,
v.
WILLIAM MORTIMER AND MARGARET MORTIMER, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 27, 1991.
Decided December 26, 1991.
*435 Before Judges BRODY, MUIR, Jr. and LANDAU.
Kenneth E. Calloway, attorney for appellant, and on the brief.
Cooper, Perskie, April, Niedelman, Wagenheim & Levenson, attorneys for respondents (William J. Kohler on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal by Dolores Avallone from the award of summary judgment favorable to defendants William Mortimer and Margaret Mortimer, his wife (both now deceased), on Avallone's complaint to recover damages suffered by reason of a sidewalk trip and fall in front of the Wildwood Crest house owned and occupied by the Mortimers in 1987.
In granting summary judgment, the motion judge assumed for purposes of the motion that a portion of the house was *436 leased by the Mortimers as a residential apartment,[1] but determined that "as a matter of law ... the premises were still residential and not commercial for the purposes of sidewalk responsibility." The judge also relied on an unpublished opinion of this court which held that seasonal rental of two apartments in an owner-occupied residential building did not transform it into commercial property within the meaning of Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981).
In Stewart, the Supreme Court re-evaluated and overruled Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976), overruled 87 N.J. 146, 432 A.2d 881 (1981), in which a divided court had upheld the old rule that an abutting landowner was not liable for pedestrian injuries sustained by reason of the poor condition of a sidewalk. The new Stewart rule, however, was limited to commercial landowners. The Court expressly reserved the question whether the same duty and public considerations apply to residential abutting owners. Stewart, supra, 87 N.J. at 159, n. 6, 432 A.2d 881.
In Hambright v. Yglesias, 200 N.J. Super. 392, 395, 491 A.2d 768 (App.Div. 1985), we recognized that under Stewart, "[C]ommonly accepted definitions of `commercial' and `residential' property should apply," and that "[f]or example, apartment buildings would be `commercial' properties covered by the rule." Stewart, supra, 87 N.J. at 160, n. 7, 432 A.2d 881. We held in Hambright that a two-family residential dwelling operated by an off-premises owner solely as a business venture was a commercial property within the meaning of Stewart. We expressed no opinion as to the result where an owner occupied part of a similar two-family house.
In Borges v. Hamed, 247 N.J. Super. 295, 589 A.2d 169 (App.Div. 1991), we affirmed a Law Division judgment which declined to extend the Stewart rule to a three-family residential *437 building in which the owners occupied one apartment, and other members of the same family occupied the remaining apartments. See Borges v. Hamed, 247 N.J. Super. 353, 358, 589 A.2d 199 (Law Div. 1990), aff'd, Borges v. Hamed, supra. We expressed no view on the result had defendants lived in one apartment and rented the other two at market rates.
Since Stewart, the Supreme Court has further defined and restricted the limited scope of its residential exception by holding that a non-profit charitable and religious organization was not exempted from the duty owed to non-beneficiary pedestrians to maintain abutting sidewalks. Brown v. St. Venantius School, 111 N.J. 325, 544 A.2d 842 (1988). Later, in Gilhooly v. Zeta Psi Fraternity, 243 N.J. Super. 201, 578 A.2d 1264 (Law Div. 1990), a sidewalk case in which the defendant fraternity's property was used both as a residence and as a social club for all members (resident, non-resident and alumni), the Law Division judge interpreted Brown to hold that "where property is partially commercial and partially non-commercial the former will take precedence in the application of the rule in Stewart." Id. at 205, 578 A.2d 1264.
We believe that the Gilhooly approach to hybrid residential/non-residential properties partially misinterprets the Brown rationale. As we read Brown, its weighing of policy considerations was ultimately resolved entirely on the grounds that there simply was no residential use of the property, and that its charitable use was not crucial in balancing the interests of the injured party against that of the abutting owner except as to a beneficiary of the charity.
Thus, in the hybrid case here presented, it is necessary for us to address the issue expressly reserved in Hambright and Borges: what should be the result where the owner resides in a two- or three-family residence which abuts the sidewalk in question? The policy considerations which are set forth at length in Stewart, 87 N.J. at 154-157, 432 A.2d 881 and Brown, 111 N.J. at 330-335, 544 A.2d 842, were substantially linked *438 with a balancing approach which resulted in the Court's conclusion that commercial and other non-residential entities are more readily able to pass on to their users the added costs associated with sidewalk liability. This rationale includes owners of apartment houses and of non-owner-occupied smaller residential buildings operated for revenue purposes.
Until and unless the Legislature or the Supreme Court abolishes the residential exception, however, we hold that the same applicable considerations of balance and ability to pass along cost require that the residential sidewalk exception be continued for owner-occupants whose residency is established to be the predominant use. Some clear-cut examples may better illustrate this holding:
(1) The owner of a residence lives only during the summer months in a small apartment on the third floor of a ten room house otherwise entirely leased year-round to an unrelated tenant paying market rent. Such an arrangement is predominantly for commercial benefit of the owner, and would fall within Stewart, as interpreted in Hambright.
(2) The owner-occupant lives year-round in a residence, but supplements income by leasing a small guest apartment to summer residents or to students. The area leased is a small portion of the total area, and the income, while at market levels, similarly offsets only a small portion of the annual carrying costs of the house. Such an arrangement would be predominantly residential, and the house would thus fall within the exception recognized in Stewart.
Closer cases than those set forth in these extreme examples will, of course, arise. However, consideration of the factors of extent of income and extent of non-owner occupancy in terms of time and space, should enable a trial judge to determine whether the owner's residential occupancy preponderates. Where there are factual disputes respecting these factors, or where their weight is unclear, these will require resolution by a trier of fact.
*439 Our review of the record leads us to conclude that the judgment below must be reversed and remanded in order to permit exploration of the predominance of use issue by motion or trial, as deemed appropriate by the trial judge under the above guidelines.
Reversed and remanded.
NOTES
[1] There appears to be some dispute respecting whether the portions of the premises available for lease were occupied at the time of the accident.