689 A.2d 869

FELIX COLARTE AND MERCEDES COLARTE, PLAINTIFFS,
v. FEDERAL NAT'L. MORTGAGE ASSN., SURYAKANTE
SHAH AND BHARATIBEN SHAH, DEFENDANTS.

Superior Court of New Jersey
Law Division (Civil)
Hudson County

Decided February 14, 1996.

526

Kathleen B. Lucey, for defendants (*Scanlon & Heim*).

Leonard J. Altamura, for plaintiffs (*Office of Leonard J. Altamura*).

OPINION

COSTELLO, J.S.C.

This is a motion for summary judgment by defendant Federal National Mortgage Association (hereinafter "Fannie Mae"), a commercial mortgage company. The issue is whether a commercial mortgage company that owns a vacant house for the purpose of reselling it is a "commercial" landowner for purposes of extending liability for a negligently maintained abutting sidewalk under the authority of *Stewart v. 104 Wallace Street Inc.*, 87 *N.J.* 146, 432 *A.*2d 881 (1981).

Plaintiff, Felix Colarte, fell on the sidewalk adjacent to the premises known as 8404–8406 Newkirk Avenue (hereinafter the Newkirk property) on the morning of March 15, 1993, following an accumulation of snow. He suffered injuries as a result of the fall. Fannie Mae was the owner of the property at the time of the accident.

Fannie Mae was the holder of a portfolio of mortgages for Globe Mortgage Company (hereinafter Globe) including the mortgage which originated in July of 1986 to Orlando Perez from Globe. Subsequently, a judgment was entered in March 1992 to repay the mortgage originally held by Globe. In September 1992, Fannie Mae became record owner of the vacant single family home pursuant to the foreclosure judgment and sale. Fannie Mae placed the vacant home up for sale to recover the money it had loaned as part of the mortgage portfolio purchased from Globe.

The court denies the motion for summary judgment because, by reference to other related decisions, four sound reasons exist to classify the property as "commercial". First, Fannie Mae never intended to use the property primarily as a residence. Second, Fannie Mae has the capacity to generate income by holding and then reselling properties. In New Jersey, *Stewart* liability is imposed upon entities that have the capacity to generate income. Third, the property was held *predominantly* for the business purpose of reselling the property to satisfy a defaulted

mortgage.  Property where the *predominant* use of the property is a business venture is considered "commercial".  Lastly, public policy considerations deem commercial entities better able to spread the risk of loss and compensate innocent victims.

As to the first issue, New Jersey commercial landowners are responsible for maintaining, in reasonably good condition, sidewalks abutting their property and they are liable to persons injured as a result of their negligent failure to do so.  Residential landowners are not so liable.  *Stewart,* 87 *N.J.* at 157, 432 *A.*2d 881.  The *Stewart* Court left the definition of "commercial" and "residential" to be decided based upon "commonly accepted definitions" of the two words.  *Stewart,* 87 *N.J.* at 160, 432 *A.*2d 881.  The *Stewart* rule has been extended to two-family houses not occupied by the owner.  *Hambright v. Yglesias,* 200 *N.J.Super.* 392, 491 *A.*2d 768 (App.Div.1985).  In *Hambright,* the Appellate Division held that a non-owner occupied two-family dwelling operated solely as a business generating rental income was considered "commercial" for purposes of applying the *Stewart* rule.  *Id.* 200 *N.J.Super.* at 395, 491 *A.*2d 768.  In interpreting n. 7 of the *Stewart* opinion, the court explained that the nature of ownership, rather than the use, is dispositive.  The court continued, "Apartment buildings are residential in the sense that they are places where people live;  they are commercial in the sense that they are operated by their owners as a business."  *Id.*

As to the second issue, the ability to make a profit is key in determining whether an entity is "commercial."  In *Borges v. Hamed,* 247 *N.J.Super.* 353, 589 *A.*2d 199 (Law Div.1990), *aff'd.,* 247 *N.J.Super.* 295, 589 *A.*2d 169 (App.Div.1990), the court held that an owner-occupied three-family unit with two rental units occupied by family members was not "commercial" property for purposes of *Stewart.*  The court reasoned that the property was a "vertical family compound" and declined to apply a test of whether the property yielded a profit.  *Id.* 247 *N.J.Super.* at 296, 589 *A.*2d 169.  In further limiting the profit consideration, *Abraham v. Gupta,* 281 *N.J.Super.* 81, 85, 656 *A.*2d 850 (App.Div.1995) im-

posed liability "... upon the owner of a profit, or not-for-profit enterprise, regardless of whether the enterprise is in fact profitable." The *Abraham* court held that it is the capacity to generate income that is dispositive in determining the character of the property for *Stewart* purposes. *See also, Wasserman v. W.R. Grace & Co.,* 281 *N.J.Super.* 34, 39, 656 *A.*2d 453 (App.Div.1995) in which the court held: "The determination of residential versus commercial status cannot be based upon profit alone, or else the status of the property would depend upon the vagaries of the market place." Therefore, Fannie Mae's capacity to generate income and not necessarily to turn a profit on the sale is determinative.

■ As to the third issue, the predominant use of the property is also key in characterizing the nature of the property. *See Avallone v. Mortimer,* 252 *N.J.Super.* 434, 599 *A.*2d 1304 (App. Div.1991). In *Avallone,* the court held that the residential exception to the *Stewart* rule applied to "owner-occupants whose residency is established to be the *predominant* use." *Id.* 252 *N.J.Super.* at 438, 599 *A.*2d 1304 (emphasis added).

Applying the aforementioned caselaw here, just as the owner in *Hambright* did not occupy the premises and ran it as a business venture, similarly Fannie Mae did not reside at the Newkirk property and engaged in the business venture of reselling homes to satisfy defaulted mortgages. Moreover, under the *Abraham* analysis it is clear that the sole purpose of obtaining the Newkirk property was to resell and satisfy the defaulted mortgage; Fannie Mae therefore had the capacity to generate income from that sale. Finally, Fannie Mae held the Newkirk property solely to resell it; this renders it predominantly "commercial" under *Avallone*'s predominant use standard. Thus, applying the standards set forth in the related cases, the Newkirk property was "commercial".

■ Fannie Mae argues that because there was no daily business activity on the Newkirk property to which safe and convenient access was essential, the property is "residential". *See Abraham v. Gupta,* 281 *N.J.Super.* at 85, 656 *A.*2d 850. This

argument is without merit. In *Abraham*, the court held that there was no liability imposed upon the owner of a commercially-zoned vacant lot where the owner negligently maintained the abutting sidewalk. *Id.* at 85–86, 656 *A*.2d 850. *Abraham* relied upon a three prong analysis: (1) the property was not owned by or used as part of a continuous commercial enterprise, (2) there was no daily business activity on the property, and (3) the property did not possess the means of generating income to purchase liability insurance or spread the risk of loss. *Id.* at 85, 656 *A*.2d 850. Here, the second prong of that test is too narrow to apply to the facts at bar. In that case the court envisioned a storefront-type location which consumers or business persons would frequent on a daily basis. Fannie Mae's business at the Newkirk property is distinguishable from such a scenario, because the Newkirk property was being held for resale and that type of investment does not rely upon or generate daily traffic at the location.

Finally, as to the fourth issue, the court must apply the public policy consideration that the commercial enterprise has the capacity to spread the risk of loss. *See Stewart*, 87 *N.J.* at 155, 157, 432 *A*.2d 881 (noting that non-liability left innocent plaintiffs without recourse for their injuries). Courts have focused on this policy consideration since *Stewart*. For example, the New Jersey Supreme Court extended the *Stewart* rule requiring maintenance to commercial landowners who unreasonably fail to remove snow and ice from abutting sidewalks. *Mirza v. Filmore Corp.*, 92 *N.J.* 390, 395, 456 *A*.2d 518 (1983). Additionally, in *Brown v. St. Venantius School*, 111 *N.J.* 325, 329, 544 *A*.2d 842 (1988), the court extended liability to private schools by holding that fairness would dictate placing the burden upon the owner who has the ability to spread the cost of the injury to its customers. *Id.* at 329, 544 *A*.2d 842. Similarly here, Fannie Mae is better able than an innocent pedestrian to absorb the cost of insurance coverage for injuries sustained as a result of negligently maintained sidewalk abutting a commercial property.

In conclusion, the court finds that Fannie Mae has failed to show that there is no genuine issue as to the characterization of their ownership as residential. Thus, it is not entitled to judgment as a matter of law, and the motion is denied.