760 A.2d 818 (2000)
334 N.J. Super. 640
Rose WILSON, Plaintiff-Appellant,
v.
Donald JACOBS, Shirley Jacobs, Township of Hazlet, Hazlet Township Parks Department, and Hazlet Township Roads Department, Defendants-Respondents, and
County of Monmouth, Monmouth County Shade Tree Commission, and Monmouth County Road Department, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2000.
Decided October 27, 2000.
Christopher R. Brown, Red Bank, argued the cause for appellant (Drazin & Warshaw, attorneys; Mr. Brown, on the brief).
Paul F. Kulinski, Cherry Hill, argued the cause for the respondents Donald Jacobs and Shirley Jacobs (David B. Wright & Associates, Moorestown, attorneys; Mr. Kulinski, on the brief).
Michael J. McKenna, Toms River, argued the cause for respondents Township of Hazlet, Hazlet Township Parks Department, and Hazlet Township Roads Department (Hiering, Hoffman & Gannon, attorneys; Mr. McKenna, on the brief).
Before Judges KING, KLEINER and COBURN.
*819 The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff Rose Wilson tripped and fell on an allegedly defective public sidewalk abutting a dwelling situated at 611 South Laurel Avenue in Hazlet.[1] Seeking damages for her injuries, plaintiff sued the record owners of the property, defendants Donald Jacobs and Shirley Jacobs ("Jacobs"); defendants Township of Hazlet, Hazlet Township Parks Department, and Hazlet Township Roads Department (collectively "Hazlet"); and defendants County of Monmouth, Monmouth County Shade Tree Commission, and Monmouth County Road Department (collectively "Monmouth").
Summary judgment was separately granted to Monmouth, Hazlet and to the Jacobs. Plaintiff appeals only from the grant of summary judgment to Hazlet and Jacobs. We affirm the grant of summary judgment to Hazlet, but reverse the summary judgment to Jacobs.

I
The Jacobs purchased the property on March 1, 1993. Pursuant to a written lease providing for a year-to-year tenancy, the Jacobs rented the property to their adult daughter, who has resided there with her children since March 1993. Under the terms of the lease, the tenant contracted to pay rent equivalent to the Jacobs' monthly mortgage payment and real estate tax liability. The lease also provided that the Jacobs were responsible for all major repairs; the tenant would be responsible for all minor repairs and general maintenance.
Deposition testimony revealed that the Jacobs have no intention of deeding the property by gift to their daughter. Should the mortgage be satisfied, the Jacobs intend to retain ownership and allow the property to become a part of the estate of the surviving spouse. The Jacobs also indicated that, should their daughter vacate the property, they would sell the property and retain the net proceeds. It is clear that the Jacobs are accruing equity in this property and could be entitled to depreciation and federal and state income tax deductions.
On Jacobs' motion for summary judgment, the motion judge concluded that despite the written lease, the monthly rental, and the accrual of equity, that the property was residential and, as such, the owner was under no obligation to maintain the sidewalk abutting the residence. See Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976).
Consistent with prior cases, the Yanhko court found that:
an abutting owner is not liable for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use, but only for the negligent construction or repair of the sidewalk by himself or by a specified predecessor in title or for direct use or obstruction of the sidewalk by the owner in such a manner as to render it unsafe for passersby.
[70 N.J. at 532, 362 A.2d 1 (citations omitted).]
On appeal, plaintiff contends that the Jacobs' property is commercial and thus the rule of commercial owner responsibility for sidewalk maintenance enunciated in Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981), applies. Stewart held, "[C]ommercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." Id. at 157, 432 A.2d 881.[2]
*820 The Supreme Court in Stewart noted that problems would arise in close cases in determining whether a particular parcel of abutting real estate was commercial or residential and cautioned: "As for the determination of which properties will be covered by the rule we adopt today, commonly accepted definitions of `commercial' and `residential' property should apply, with difficult cases to be decided as they arise." Id. at 160, 432 A.2d 881. In a footnote, the Court added, "For example, apartment buildings would be `commercial' properties covered by the rule." Id. at n.7.
Since Stewart, we extended liability to a non-owner occupied two-family house that was leased to two separate tenants. Hambright v. Yglesias, 200 N.J.Super. 392, 394-95, 491 A.2d 768 (App.Div.1985). Hambright specifically noted that Stewart "made it clear that it was the nature of the ownership that mattered, not the use to which the property is put." Id. at 395, 491 A.2d 768.
In Brown v. St. Venantius School, 111 N.J. 325, 338, 544 A.2d 842 (1988), the Supreme Court limited the scope of the residential exception set forth in Stewart by holding that a non-profit charitable and religious organization owed a duty to non-beneficiary pedestrians to maintain abutting sidewalks.
In Gilhooly v. Zeta Psi Fraternity, 243 N.J.Super. 201, 207-08, 578 A.2d 1264 (Law Div.1990), the court held that a fraternity house was liable for its sidewalk under Stewart because it was used not only as a residence for forty-two college students, but also as a social club for members, including members and alumni who did not reside therein. The Law Division judge, citing Brown, concluded that "where property is partially commercial and partially non-commercial the former will take precedence in the application of the rule in Stewart." Id. at 205, 578 A.2d 1264.
In Borges v. Hamed, 247 N.J.Super. 295, 589 A.2d 169 (App.Div.1991), we refused to impose Stewart liability on a three-family residence where the owners resided in one apartment and other family members resided in the other two apartments. The other family members paid rent to the owner, but we noted there was no evidence that the rent yielded a profit. Id. at 296, 589 A.2d 169. We said: "We do not consider what should be the result if defendants lived in one apartment and rented the other two at market rates...." Ibid.
In Avallone v. Mortimer, 252 N.J.Super. 434, 599 A.2d 1304 (App.Div.1991), we concluded that "the Gilhooly approach to hybrid residential/non-residential properties partially misinterprets the Brown rationale." Id. at 437, 599 A.2d 1304. We stated:
As we read Brown, its weighing of policy considerations was ultimately resolved entirely on the grounds that there simply was no residential use of the property, and that its charitable use was not crucial in balancing the interests of the injured party against that of the abutting owner except as to a beneficiary of the charity.

[Ibid.]
In Avallone, the owners of property in Wildwood Crest were sued after the plaintiff tripped and fell on a sidewalk abutting their residence. Id. at 435, 599 A.2d 1304. A portion of that residence was leased as a residential apartment. Id. at 435-36, 599 *821 A.2d 1304. We characterized defendant's property as a hybrid property. Id. at 437, 599 A.2d 1304. We raised the question, "what should be the result where the owner resides in a two- or three-family residence which abuts the sidewalk in question?" Ibid. We then said:
The policy considerations which are set forth at length in Stewart, 87 N.J. at 154-157 [432 A.2d 881] and Brown, 111 N.J. at 330-35 [544 A.2d 842], were substantially linked with a balancing approach which resulted in the Court's conclusion that commercial and other non-residential entities are more readily able to pass on to their users the added costs associated with sidewalk liability. This rationale includes owners of apartment houses and of non-owner-occupied smaller residential buildings operated for revenue purposes.
[Id. at 437-38, 599 A.2d 1304 (parallel citations omitted).]
In Avallone, the motion judge who granted summary judgment to the property owner concluded that "`as a matter of law ... the premises were still residential and not commercial for the purposes of sidewalk responsibility.'" Id. at 436, 599 A.2d 1304. On appeal, we reversed and remanded in order "to permit exploration of the predominance of use." Id. at 439, 599 A.2d 1304. We explained:
Until and unless the Legislature or the Supreme Court abolishes the residential exception ... we hold that the same applicable considerations of balance and ability to pass along cost require that the residential sidewalk exception be continued for owner-occupants whose residency is established to be the predominant use.
[Id. at 438, 599 A.2d 1304. (emphasis added).]
The most recent discussion of Stewart is our opinion in Smith v. Young, 300 N.J.Super. 82, 692 A.2d 76 (App.Div.1997). In Smith, the plaintiff fell on a sidewalk abutting a property that was co-owned by two parties. Id. at 84, 692 A.2d 76. One co-owner resided in one apartment and the other co-owner rented a second residential apartment unit to a tenant. Ibid. We concluded that there was no liability under Stewart because one owner resided in the premises. Id. 99-100, 692 A.2d 76.
Here, this appeal involves a non-owner occupied residence. The property is leased on a yearly basis pursuant to a written lease. The tenant pays rent equivalent to the monthly mortgage debt plus the monthly real estate tax liability of the owners and the tenant is responsible for all minor repairs and property maintenance. It is perfectly clear that, were this property occupied by a non-family member, we would easily conclude the property was "commercial" within the parameters of Stewart.
We cannot conclude that the familial relationship of the occupant to the owner should constitute a cognizable differentiation in the "residential" or "commercial" analysis. The defendants, as owners, can pass the costs of protecting against sidewalk liability to the tenant-family member. Our conclusion is buttressed by the fact that defendants have no intent of deeding the property to their daughter, but rather intend to retain ownership as long as she resides within the property and ultimately allow title to pass by will or intestacy to the estate of the surviving owner.
Alternatively, if their daughter vacates the premises, defendants intend to sell the property and to retain the proceeds, which naturally will include any equity accruing during the tenancy. As we have previously stated, Stewart "made it clear that it [is] the nature of the ownership that [matters], not the use to which the property is put." Hambright v. Yglesias, supra, 200 N.J.Super. at 395, 491 A.2d 768.

II
In a separate summary judgment motion, plaintiff's complaint against defendant Hazlet was dismissed. The motion *822 judge[3] concluded, citing Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995), that as a matter of law, plaintiff failed to establish that the condition of this sidewalk constituted a dangerous condition of public property as defined by the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, and particularly embodied in N.J.S.A. 59:4-2.
N.J.S.A. 59:4-2 provides, among other things,
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a.....
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
N.J.S.A. 59:4-1(a) defines "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (emphasis added).
N.J.S.A. 59:4-3 defines actual notice and constructive notice as follows:
a. A public entity shall be deemed to have actual notice of a dangerous condition... if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
b. A public entity shall be deemed to have constructive notice of a dangerous condition ... only if plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
Using this statutory scheme, the motion judge emphasized that the plaintiff had failed to offer any evidence by way of answers to interrogatories, deposition testimony, or certifications that defendant Hazlet had either actual or constructive notice of the alleged sidewalk defect. The judge also correctly noted that the mere happening of an accident on public property is insufficient to impose liability upon a public entity.
The condition of the property must pose a substantial risk of injury. N.J.S.A. 59:4-1. In evaluating the condition of this sidewalk, the judge was provided with color photographs of the accident scene that were shown to the plaintiff at her deposition and identified by her as accurately depicting the place where she fell. Those same photographs were presented to this court within the record on appeal. The judge noted that there was a space between two concrete blocks "where some grass is growing. There is no obvious defect in the elevation of that particular sidewalk...." Lastly, he concluded that the condition of the sidewalk was not one which any finder of fact could conclude created a dangerous condition.
"Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539, 732 A.2d 1035 (1999). The motion judge correctly noted that plaintiff failed to present any evidence of potential *823 public entity liability, thus he appropriately granted summary judgment to Hazlet. Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(C).
Summary judgment to defendant Jacobs is reversed and the matter is remanded for trial. Summary judgment to defendant Hazlet is affirmed.
NOTES
[1] The record on appeal does not reflect the purchase price for this property or the amount of the Jacobs' first mortgage. The record does reflect that the Jacobs paid a down payment of $40,000.
[2] In Mirza v. Filmore Corp., 92 N.J. 390, 395, 456 A.2d 518 (1983), the duty of a commercial landowner was held to include removal or reduction of snow and ice as well as repair. The Court stated:

We hold ... that maintenance of a public sidewalk in a reasonably good condition may require removal of snow or ice or reduction of the risk, depending upon the circumstances. The test is whether a reasonably prudent person, who knows or should have known of the condition, would have within a reasonable period of time thereafter caused the public sidewalk to be in reasonably safe condition.
[Id. at 395-96, 456 A.2d 518 (footnote omitted).]
Since plaintiff fell on a allegedly defective sidewalk, the rule enunciated in Mirza is not applicable in our analysis.
[3] The motion judge presiding at Hazlet's summary judgment application was not the same judge who presided at Jacobs' motion for summary judgment.