**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2749-22

MADELYNE FIGUEREDO and
EDUARDO FIGUEREDO,

      Plaintiffs-Appellants,

v.

TOWNSHIP OF UNION,
NATC DONUTS, INC. d/b/a
DUNKIN' DONUTS,

      Defendants-Respondents.

_____

Argued September 12, 2024 – Decided September 26, 2024

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2808-20.

Tiana Gimbrone argued the cause for appellants (Rinaldo and Gimbrone, PC, attorneys; Tiana Gimbrone, on the briefs).

Gregory D. Emond argued the cause for respondent Township of Union (Antonelli Kantor Rivera, attorneys; Jarrid H. Kantor, of counsel and on the brief;

Gregory D. Emond and Michael A. Sabony, on the brief).

Adam M. Maurer argued the cause for respondent NATC Donuts, Inc. d/b/a Dunkin' Donuts (Kinney Lisovicz Reilly & Wolff, PC, attorneys; Adam M. Maurer, of counsel and on the brief).

PER CURIAM

Plaintiffs Madelyne Figueredo (plaintiff) and Eduardo Figueredo appeal from two orders granting summary judgment dismissal of their complaint against defendants Township of Union (the Township) and NATC Donuts, Inc., doing business as Dunkin' Donuts (NATC or Dunkin' Donuts). Plaintiff was injured when she slipped, tripped, or fell in a parking lot in what she claimed was a pothole while walking to NATC to get coffee and a bagel.

The Township moved for summary judgment, arguing the complaint was barred by the immunity provisions of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Judge Daniel R. Lindemann granted the motion. NATC filed a cross-motion for summary judgment, arguing there was no duty owed or breached to plaintiff. The judge denied NATC's cross-motion on the basis that the record contained material disputed issues of fact. However, the judge later granted NATC's second cross-motion for summary judgment, finding NATC did not owe a duty to plaintiff, because the commercial parking lot was used for

2

various purposes and maintained by the Township. The judge determined that imposing a duty on NATC would result in duplicative efforts and interfere with the Township's maintenance of the parking lot. The judge noted that while NATC has reserved parking spots in the lot, the Township maintains the entire lot, including repairs and inspection. Accordingly, the judge dismissed the complaint in its entirety with prejudice.

On appeal, plaintiff argues the judge: (1) erred in granting summary judgment to the Township as there was sufficient information to demonstrate a genuine issue of material fact of a dangerous condition; (2) erred in finding that plaintiff has not suffered a permanent loss of a bodily function that is substantial; (3) erred in granting summary judgment to NATC as there were sufficient facts to demonstrate a duty owed by NATC; and (4) erred in dismissing the complaint against both defendants.

We have considered these arguments in light of the record and applicable law. We affirm dismissal of the complaint as to both defendants because there are no genuine issues of material fact that precluded judgment as a matter of law under Rule 4:46-2(c).

A-2749-22

I.

Viewed in the light most favorable to plaintiff, Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016), the pertinent facts are as follows. On December 1, 2006, the Township and NATC entered into a lease agreement for 971 square feet of retail commercial real estate located at 1982 Morris Avenue in Union, plus ten parking spaces. Regarding maintenance, the lease agreement states:

> Tenant shall be responsible for day-to-day maintenance and repairs to the [p]remises, including surfaces of the interior walls, floors and ceiling. Any and all appliances located in or on the [p]roperty shall be maintained, repaired or replaced, if necessary, by [t]enant. Tenant shall, at its expense, obtain and maintain such pest control measures and services as are necessary, in the opinion of [l]andlord, to maintain the premises in a clean and sanitary condition. Landlord shall be responsible for the maintenance, repair or replacement of all structural components of the [p]roperty including the roofing system and drainage systems. Electrical and plumbing, to the extent constructed or renovated by the [t]enant shall be the responsibility of the [t]enant[.]

The lease agreement does not contain a provision that allocates the duty to maintain common areas—such as parking lots—to NATC.

On September 6, 2018, plaintiff parked her car in the shared parking lot connected to 1982 Morris Avenue, which is in front of the Township's municipal

building. Specifically, she parked her car in one of the marked parking spots that was assigned by the lease agreement to NATC.

Upon arrival, plaintiff headed to Dunkin' Donuts when the incident occurred. At her deposition, plaintiff testified that she fell when "her foot got caught on a hole in the ground, a pothole that was there." When asked if she could describe the pothole, plaintiff testified, "[n]o . . . I can't . . . I saw it when I smashed down on the ground, but I was in a lot of pain. I'm not gonna notice dimensions or anything like that." Plaintiff claimed the fall "propelled [her] to fall forward and smash [her] knee."[1]

At her deposition, the Township's attorney showed plaintiff a Google Maps image of the parking lot from September 2018, the time of the incident. When asked if anything looked similar to what she saw on the day she had fallen, plaintiff testified, "[w]ell, this looks the way it was that day." Counsel then asked plaintiff if she could point out the pothole in the Google Maps image to which she responded, "not really. I mean [. . .] this is going back a while. Like, I think it could have been here." After counsel pointed out that he did not see a

---

[1] Officer Christopher Argast prepared an investigative report on the day plaintiff fell. Officer Argast noted in the report, "I observed no pothole but did see that the pavement was slightly uneven at spots in that area."

pothole in the picture, plaintiff stated, "[n]o[,] but there are several cracks, I could clearly see them."

Louis Ulrich, the Township's Director of Public Works, was also deposed. He testified that the Township had previously received three reports of concern regarding the subject parking lot. However, all previous reports of conditions on the property were marked as "completed" by the Township, meaning each report was reviewed and necessary repairs were completed.

When asked about his understanding as to the responsibilities and duties of the Township with regard to repairs to the parking lot, Ulrich responded, "[w]e maintain it. Whatever the agreement is . . . we've always maintained it. We sweep it. We've done pothole repair there. We don't separate the lot. We maintain the whole area." Ulrich testified that the Township maintains the parking lot, and to his knowledge, NATC has never performed any maintenance on the parking lot.

Ulrich also testified about the condition of the parking lot after viewing the Google Maps image of the parking lot:

> [Plaintiff's counsel]: Okay. Looking at this Google Maps picture that's up now, can you tell me if the cracks and the holes that you could see, if those would have been noticed for repair or for an issue if someone had come and checked this?

A-2749-22

[Ulrich]: Ones that would, you know, potentially cause a safety hazard, yes.

[Plaintiff's counsel]: Okay. In this picture, do you see any that in your opinion would cause a safety hazard?

[Ulrich]: Based on what I see, no.

[Plaintiff's counsel]: Okay.

[Ulrich]: I've seen worse, so.

[Plaintiff's counsel]: Okay. Can you explain to me in your opinion what you believe a safety hazard to be?

        . . . .

[Ulrich]: Like a big – a depression, a huge depression, something like that, you know, loose – loose asphalt.

[Plaintiff's counsel]: Okay. Can you tell from this picture if there is any big depression?

[Ulrich]: It looks like there's some scaling but I don't see anything really deep here.

Ulrich also testified that the parking lot did not constitute a safety hazard, but it "needed to be repaved, which it was." Ulrich explained "[i]t doesn't look pretty, which we get a lot of that too. It doesn't look nice, but there's really no safety hazard. It's just not aesthetically pleasing to look at."

A-2749-22

As a result of the fall, plaintiff underwent an MRI, which revealed torn ligaments in her left ankle and foot. Plaintiff went to physical therapy and ultimately had left ankle surgery.

Plaintiff filed a complaint asserting tort claims against the Township and NATC:

> [Both the Township and NATC] individually and/or by and through its agents, servants, employees and/or managers or the [NATC's] direct predecessor in title, carelessly, negligently and/or recklessly maintained certain areas of the premises in a negligent matter so as to allow the parking lot to be damaged, deteriorated, ill-repaired, ill-maintained, contain cracks, crevices, holes, and other situations which presented and posed an unreasonably dangerous and hazardous condition, such that same became and was unsafe to persons of the public and lawful patrons of the aforementioned premises including [p]laintiff, . . .

The complaint also alleged that both the Township and NATC were "under a duty to use reasonable care to maintain the aforesaid area in a safe and suitable condition for public use so that persons of the general public, . . . lawful business invitees of the premises, and other lawful persons might use the aforesaid area in safety."

The Township filed an answer with separate defenses and cross-claims, denying it was negligent, careless, and reckless, and asserted it was immune

8

from liability under the TCA.[2]  NATC filed an answer to plaintiff's complaint denying liability and a cross-claim for contractual indemnification against the Township.  After the completion of discovery, the Township filed a motion for summary judgment seeking to dismiss plaintiff's claims under the TCA.  NATC cross-moved for summary judgment contending there was no duty owed or breached to plaintiff.

On November 4, 2022, after hearing argument, the judge reserved decision.  On November 16, 2022, the judge entered an order granting in part and denying in part the Township's motion for summary judgment and denying NATC's cross-motion for summary judgment entirely.

In addressing the main point of contention—whether the Township and NATC were entitled to judgment as a matter of law—the judge first determined that plaintiff's opposing certification contravened the "sham affidavit doctrine." The judge highlighted that "plaintiff was presented with her own photographs at the deposition and was unable to recall, identify, or describe the alleged

---

[2]  Prior to filing its answer, separate defenses, and cross-claims, the Township moved for summary judgment in lieu of filing an answer.  The motion was later withdrawn.  The Township filed a second motion for summary judgment, which was denied, and a motion for partial summary judgment, which was also denied.  These motions are not contained in the record and are not germane to our decision.

A-2749-22

pothole." The judge found plaintiff's certification was "submitted directly in contradiction to her testimony."

Based on the undisputed facts in the record, the judge determined that the parking lot was not a dangerous condition under N.J.S.A. 59:4-2. The judge noted he was "unable to find within the photographs anything more than small cracks or uneven surfaces in the parking lot." The judge further stated that the fact Ulrich thought the parking lot needed to be repaved supports plaintiff's argument as she "readily concede[d] [he] is not the person to determine if the parking lot requires maintenance." The judge concluded that "merely stating that a pothole was in the general vicinity of the parking lot and yet unidentifiable by concededly accurate photographs is not enough to demonstrate a genuine issue of material fact on this issue."

The judge found plaintiff failed to show: the Township had either actual or constructive knowledge of the alleged dangerous condition; the Township acted in a palpably unreasonable manner; and that her left ankle and left knee injuries constituted "a permanent loss of bodily function that is substantial." Accordingly, the judge dismissed plaintiff's complaint against the Township.

However, the judge denied NATC's first cross-motion for summary judgment finding there were material disputed facts. Specifically, the judge

noted the disputed facts centered around who had a contractual obligation to maintain the parking lot—the Township or NATC. The judge reasoned the question of whether NATC breached its duty to plaintiff was a "question of fact" that was better left for the jury to determine.

On January 20, 2023, plaintiff filed a motion for partial summary judgment seeking three findings: (1) her injuries are permanent in nature; (2) NATC owed a duty to her; and (3) NATC is precluded from claiming a public entity exception as a defense. On February 7, 2023, NATC filed its second cross-motion for summary judgment requesting all claims against it be dismissed.

On March 17, 2023, the judge heard oral argument on the motion and cross-motion and reserved decision. On March 28, 2023, the judge issued an order and written decision denying plaintiff's motion for partial summary judgment and granting NATC's second cross-motion for summary judgment.

In his thorough decision, the judge determined that the issue of whether plaintiff suffered a permanent and substantial loss of bodily function under the TCA was moot because the court previously granted summary judgment to the Township. The judge noted "there is no dispute" that NATC is not a public entity and therefore is not subject to TCA immunity.

11

The judge then analyzed whether NATC owed a duty to plaintiff. Citing Hopkins v. Fox & Lazo Realtors,[3] the judge found plaintiff was an invitee of NATC. As to the nature of plaintiff's risk, the judge determined it was "reasonably foreseeable that a parking lot would have normal wear and tear over time such as cracks and crevices and it is not unreasonable to place the burden on the commercial tenant, who has reserved parking spots in the parking lot, to repair deficiencies in the parking lot." As to the opportunity and ability for NATC to exercise care, the judge determined that "as the commercial tenant who has reserved parking spots in the parking lot[,] [NATC] had an opportunity and ability to exercise care over the parking lot."

When discussing the public interest Hopkins factor, the judge found it significant that the parking lot was not solely used by NATC:

> As discussed in Holmes[4], imposing a duty on [NATC] here, in the instance of the multi-use parking lot wherein the Township already readily maintains the parking lot, could create interference as to the Township['s] maintenance of the lot. Imposing a duty on a [t]enant to maintain a multi-use lot may also create uncertainty and confusion as to which tenants are

---

[3]  132 N.J. 426, 438 (1996) (setting forth that the determination of whether a duty exists requires consideration of public policy including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.").

[4]  Holmes v. Kimco Realty Corp., 598 F.3d 115, 123-24 (3d Cir. 2010).

A-2749-22

responsible for certain portions of a parking lot and where certain portions begin and common areas end.

After considering each <u>Hopkins</u> factor, the judge ultimately concluded NATC did not owe a duty to plaintiff. The judge highlighted that imposing a duty on NATC "would result in 'duplicative efforts' and interfere with the Township's maintenance of the parking lot." In addition, the judge also noted that although NATC has reserved parking spots in the lot, "the Township maintains the entire lot including completing repairs and inspections." A memorializing order was entered. This appeal followed.

## II.

We review the grant of summary judgment de novo, applying the same legal standards as the trial court. <u>Green v. Monmouth Univ.</u>, 237 N.J. 516, 529 (2019). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995); <u>see</u> <u>R.</u> 4:6-2.

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." <u>DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman</u>, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation

13

omitted); Nicholas v. Mynster, 213 N.J. 463, 478 (2013). "The factual findings of a trial court are reviewed with substantial deference on appeal, and are not overturned if they are supported by 'adequate, substantial and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001)).

## A.

"The TCA indisputably governs causes of action in tort against governmental agencies within New Jersey." Gomes v. Cnty. of Monmouth, 444 N.J. Super. 479, 487 (App. Div. 2016); see N.J.S.A. 59:2-1(a) (concerning immunity of public entity generally); see also Nieves v. Off. of the Pub. Def., 241 N.J. 567, 571 (2020). Under the TCA, a public entity has a duty of care different from "that . . . owed under the negligence standard." Polzo v. Cnty of Essex, 209 N.J. 51, 76 (2012); see Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 460 (2009) (discussing when the palpably unreasonable conduct standard, which is higher than the ordinary negligence standard, applies to a public employee).

When asserting a claim for injuries under the TCA, the plaintiff has the burden of satisfying each element of a cause of action under N.J.S.A. 59:4-2. Polzo, 209 N.J. at 66; Carroll v. N.J. Transit, 366 N.J. Super. 380, 386 (App.

14

Div. 2004) ("[N.J.S.A. 59:4-2(a) - (b)] places the burden squarely on the plaintiff to prove each of its elements . . . .").  A failure to present sufficient evidence establishing any element of a cause of action under N.J.S.A. 59:4-2 requires dismissal of the claim.  See Polzo, 209 N.J. at 66.

Only in limited circumstances are public entities liable in tort under the TCA for injuries caused by conditions of a property.  Under N.J.S.A. 59:4-2, a public entity is liable for injuries caused by the entity's property only where plaintiff established:   (1) the [public entity's] "property was in dangerous condition [at the time of the injury"]; (2) "the injury was proximately caused by the dangerous condition"; (3) "[the dangerous condition] created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition . . . ."  Stewart v. N.J. Tpk. Auth., 249 N.J. 642, 656 (2022) (citation omitted) (quoting N.J.S.A. 59:4-2).

A public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable."  Vincitore ex rel. Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2).

Liability will be found if "a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J.S.A. 59:4-2(b). "The public entity is deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." [N.J.S.A. 59:4-3(b).]

The Legislature did not intend to impose liability for a condition merely because a danger may exist. See Levin v. Cnty. of Salem, 133 N.J. 35, 49 (1993). Rather, "[d]angerous condition" is a defined term and "means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1.

"[T]he dangerous condition[,] which is the predicate for liability of a public entity under N.J.S.A. 59:4-2, must be a dangerous condition inherent in property 'owned or controlled' by the public entity." Dickson ex rel. Duberson v. Twp. of Hamilton, 400 N.J. Super. 189, 196 (App. Div. 2008) (alterations omitted) (citation and internal quotation marks omitted). A dangerous condition

16

[must be] a "physical condition of the property itself"; and not [refer] "to activities on the property." Levin, 133 N.J. at 44.

Whether a property is in a "dangerous condition" is generally a question for the finder of fact. Vincitore, 169 N.J. at 123. Nonetheless, that determination is subject to the court's preliminary assessment of whether a reasonable factfinder could conclude from the evidence presented by the plaintiff that the property was in dangerous condition. Id. at 124.

A public entity has actual notice of a dangerous condition "if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). A public entity has constructive notice of a dangerous condition "if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b).

"The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). "Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set

forth in N.J.S.A. 59:4-3(a) and (b), not by whether 'a routine inspection program' by the [public entity] . . . would have discovered the condition." Polzo, 209 N.J. at 68.

A public entity is also not liable for a dangerous condition of its property "if the action the entity took to protect against[5] the condition or the failure to take such action was not palpably unreasonable." Vincitore, 169 N.J. at 125 (quoting N.J.S.A. 59:4-2). Palpably unreasonable behavior is behavior "patently unacceptable under any given circumstance." Ogborne, 197 N.J. at 459 (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). For behavior to be "palpably unreasonable," "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction." Ibid. (quoting Kolitch, 100 N.J. at 493.)

Plaintiff contends the judge erred because there was sufficient evidence to show a material question of fact as to the dangerousness of the parking lot.[6]

---

[5] Under N.J.S.A. 59:4-1, "protect against" is defined to include "repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition."

[6] The Township also argues that plaintiff failed to brief certain elements of the TCA; therefore, those elements are waived, and the appeal is moot. In regard to its claims against the Township, plaintiff's merits brief only contained a point heading for whether there was a dangerous condition and a point heading for

The Township counters that even affording plaintiff all reasonable inferences, no dangerous condition existed as defined by the TCA.

N.J.S.A. 59:9-2(d) provides "[n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; . . . [except] in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment."  To satisfy N.J.S.A. 59:9-2(d) a plaintiff must show "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial."  Gilhooley v. Cty. of Union, 164 N.J. 533,

_____

whether she suffered a permanent loss of bodily function that is substantial. Plaintiff neglected to include point headings for the following elements, which are required in order to obtain relief under the TCA:  (3) the public entity knew of the dangerous condition and (4) the public entity's action to protect against the dangerous condition was palpably unreasonable.

In plaintiff's reply brief, she alleges that the one sentence requesting the remaining missing elements be remanded—at the end of point heading one—"is a proper way to address the issues in the appeal."  However, the court rules are clear.  This court limits its consideration "of the issues to those arguments properly made under appropriate point headings" and do not address "oblique hints and assertions" that are untethered to the point headings required under Rule 2:6-2(a)(6).  Almog v. Isr. Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997); see also Mid-Atl. Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011) (refusing to address an issue raised in a two-sentence paragraph in a brief "without a separate point heading, in violation of Rule 2:6-2(a)[(6)]").

We agree that plaintiff did not properly brief all the elements required by the TCA.  Nevertheless, we address the merits of plaintiff's claims in our opinion.

540-41 (2000) (citing Brooks v. Odom, 150 N.J. 395, 402-03 (1997)). The analysis is fact sensitive. Id. at 541. There is "no per se rule that would be decisive in all cases." Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 331 (2003) (citation omitted). "[I]t is the nature or degree of the ongoing impairment that determines whether a specific injury meets the threshold requirement under the [TCA]." Ibid. Under the second prong of Gilhooley/Brooks "there must be a 'physical manifestation of [a] claim that [an] injury . . . is permanent and substantial.'" Id. at 332 (alterations in original) (quoting Ponte v. Overeem, 171 N.J. 46, 54 (2002)).

At her deposition, plaintiff was asked to describe the alleged pothole to which she responded, "I can't." Moreover, when shown a Google Maps image of the parking lot from the same month as the accident—which plaintiff testified "look[ed] the way it was that day"—she was unable to point out where the alleged pothole and was only able to note it was "in the general vicinity." Later in the deposition, plaintiff even conceded that there was no pothole, rather "there [were] several cracks."[7]

---

[7] These inconsistencies led the judge to apply the sham affidavit doctrine. The sham affidavit doctrine permits a court to reject self-serving certifications filed in opposition to a summary judgment motion that directly contradict a party's prior sworn representations under oath to create a genuine issue of material fact. See Shelcusky v. Garjulio, 172 N.J. 185, 201-02 (2002).

The judge reviewed the photographs of the subject parking lot and noted he was "unable to find . . . anything more than small cracks or uneven surfaces in the parking lot." Based upon our de novo review, we discern no error with the judge's characterization of the photographic evidence.

Our Court has held that cracks and crevices are not to be considered a condition of property that creates a substantial risk of injury. See Kolitch, 100 N.J. at 493 (establishing that "courts have defined a 'substantial risk' as 'one that is not minor, trivial or insignificant.'"); see, e.g., Wilson v. Jacobs, 334 N.J. Super. 640, 648-49 (App. Div. 2000) (upholding summary judgment for municipality where there was a noticeable gap between sidewalk pavers because this did not constitute a dangerous condition).

We are aware that a plaintiff filing a complaint against a public entity under the TCA has a heavy burden to carry. See Foster v. Newark Hous. Auth., 389 N.J. Super. 60, 65-66 (2006) (stating that a plaintiff "bears the heavy burden of establishing defendant's liability under the stringent provisions of the [TCA]"). As the judge aptly noted, "[m]erely stating that a pothole was in the general vicinity of the parking lot and yet unidentifiable by concededly accurate photographs is not enough to demonstrate a genuine issue of material fact on this issue." See Brill, 142 N.J. at 529 (establishing that "a non-moving party

21

cannot defeat a motion for summary judgment merely by pointing to any fact in dispute.").  The judge was correct in his analysis.

In support of her argument, plaintiff relies on Ulrich's deposition testimony as "competent evidence that a dangerous condition existed and [was] sufficient to defeat a motion for summary judgment."  Plaintiff contends the following line of questioning from Ulrich's deposition:

> [Plaintiff's counsel]:  So looking at this picture that's up on the screen, would you bring it to the supervisor to say that anything in this parking lot needed to be repaired and let the supervisor make that decision?
>
> [Ulrich]:  Yes, I would let him assess it, and there's multiple ways to—for pot—asphalt maintenance. There's crack filling, there's—you know, there's patching, there's overlays, there's—you know, everything's different, so.

Plaintiff also cites to Ulrich's testimony that the parking lot "needed to be repaired."  Again, we are unpersuaded.

Ulrich did not testify that the parking lot was a dangerous condition. Instead, Ulrich testified the parking lot was "just old" and "didn't look pretty," but that "there's really no safety hazard."  And, Ulrich merely stated he would simply bring an issue regarding whether a repair was needed to the attention of his supervisor, who would make that determination.  The judge correctly noted, "[t]he fact that [Ulrich], who [p]laintiff readily concedes is not the person to

22

determine if the parking lot requires repair or maintenance, thought the parking lot needed to be repaved adds no support to [p]laintiff's argument."

Because the evidence contained in this record does not permit reasonable minds to differ as to whether the subject parking lot's condition was dangerous, plaintiff's claim fails under the TCA. See Polzo, 209 N.J. at 66 (explaining "[u]nless plaintiff in this case can satisfy the elements of a cause of action set forth in N.J.S.A. 59:4-2, he [or she] does not have a basis for a recovery."). Based on our de novo review, the judge properly granted the Township's motion for summary judgment.

In light of our affirmance of the dismissal of the complaint against the Township on the basis the parking lot was not a dangerous condition under N.J.S.A. 59:4-2, we need not address plaintiff's argument that the judge erred in finding she did not suffer a permanent injury and substantial loss of bodily function under N.J.S.A. 59:9-2(d).

## B.

Finally, plaintiff contends that the judge erred in finding that NATC did not owe her a duty of care. In particular, plaintiff argues that a question of material fact remains as to whether the subject lease addresses maintenance of the designated parking spots NATC bargained for and were assigned to for

Dunkin Donuts. NATC counters that because plaintiff's accident occurred in the common area of the parking lot—not one of their assigned parking spots—NATC owed no duty to plaintiff.[8]

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo, 196 N.J. at 584). Plaintiff "bears the burden of establishing those elements by some competent proof." Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)). "It is well-settled law that a recovery for damages cannot be had merely upon proof of the happening of an accident." Universal Underwriters Grp. v. Heibel, 386 N.J. Super. 307, 321 (App. Div. 2006). "Negligence is never presumed; it, or the circumstantial basis for the inference of it, must be established by competent proof presented by plaintiff." Ibid.

---

[8] NATC also argues that plaintiff cannot prove her prima facie case without a liability expert. Expert testimony is not required when the jury can understand the concepts in a case "utilizing common judgment and experience." Campbell v. Hastings, 348 N.J. Super. 264, 270 (App. Div. 2002). Expert testimony is required only when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982).

A-2749-22

"A prerequisite to recovery on a negligence theory is a duty owed by defendant to plaintiff." Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988). "Under the common law of premises liability, a landowner owes increasing care depending on whether the visitor is a trespasser, licensee or social guest, or business invitee." Sussman v. Mermer, 373 N.J. Super. 501, 504 (App. Div. 2004) (citing Parks v. Rogers, 176 N.J. 491, 497 (2003)). "The duty owed to a business visitor 'encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions' as well as 'to guard against any dangerous conditions . . . that the owner either knows about or should have discovered.'" Parks, 176 N.J. at 497 n.3 (omission in original) (quoting Hopkins, 132 N.J. at 434).

Whether a party owes a legal duty, as well as the scope of the duty owed, are questions of law for the court to decide. Carvalho v. Toll Bros. & Dev., 143 N.J. 565, 572 (1996). "The inquiry has been summarized succinctly as one that 'turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 401 (2006) (quoting Hopkins, 132 N.J. at 439). Our Court has identified the following factors for a court to weigh in determining whether to recognize a duty:

(1) the nature of the underlying risk of harm, that is, its foreseeability and severity, (2) the opportunity and ability to exercise care to prevent the harm, (3) the comparative interests of, and the relationships between or among, the parties, and (4) ultimately, based on the considerations of public policy and fairness, the societal interest in the proposed solution.

[J.S. v. R.T.H., 155 N.J. 330, 337 (1998) (citing Hopkins, 132 N.J. at 439).]

We next apply these foundational principles to the matter before us. Term one of the lease defines the premises as: "971 square feet of retail commercial real estate located at 1982 Morris Avenue, Union, New Jersey 07083, plus ten parking spaces." Term ten explains what NATC is legally required to maintain:

Tenant shall be responsible for day-to-day maintenance and repairs to the [p]remises, including surfaces of the interior walls, floors and ceiling. Any and all appliances located in or on the [p]roperty shall be maintained, repaired or replaced, if necessary, by [t]enant. Tenant shall, at its expense, obtain and maintain such pest control measures and services as are necessary, in the opinion of [l]andlord, to maintain the premises in a clean and sanitary condition. Landlord shall be responsible for the maintenance, repair or replacement of all structural components of the [p]roperty including the roofing system and drainage systems. Electrical and plumbing, to the extent constructed or renovated by the [t]enant shall be the responsibility of the [t]enant[.]

Despite plaintiff's argument to the contrary, the lease simply does not establish that NATC is required to maintain the "surrounding premises," which is where

26

she actually fell. Rather, NATC was only legally required to maintain the 971 square feet of retail commercial real estate and the ten parking spaces—neither of those places being the location of the accident.

Additionally, Ulrich confirmed that the Township maintained the parking lot. He testified, "[w]hatever the agreement is, . . . we've always maintained it. We sweep it. We've done pothole repair there. We don't separate the lot. We kind of maintain the whole area." The Township clearly maintains control of the common area of the subject parking lot. Thus, NATC does not owe a duty to plaintiff here.

Furthermore, the judge assessed the Hopkins factors to determine whether NATC owed a duty to plaintiff. The first factor—the nature of the underlying risk of harm, that is, its foreseeability and severity—"focuses on 'whether the risk is foreseeable, whether it can be readily defined, and whether it is fair to place the burden o[f] preventing the harm upon the defendant,'" Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 560 (App. Div. 2020) (quoting Davis v. Devereaux Found., 209 N.J. 269, 296 (2012)). We concur with the judge's finding that it is reasonably foreseeable someone could get injured due to cracks and potholes in a parking lot, and it would not be unreasonable to have a commercial tenant repair said deficiencies in the lot.

A-2749-22

Regarding the second factor—the opportunity and ability to exercise care to prevent the harm—the judge properly noted that NATC had an opportunity and an ability to exercise care over the subject parking lot. For the third factor—the parties' relationship—it is clear that plaintiff was a business invitee and NATC had "a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered." Hopkins, 132 N.J. at 434.

However, the fourth factor—the public interest[9] in the proposed solution—weighs against imposing a duty on NATC. Here, there is ample evidence that the parking lot is not used solely by NATC customers, rather it is a public, multi-use lot available for all local shoppers and visitors of the surrounding Township buildings.

We have previously considered the question of whether a commercial tenant in a multi-use shopping center owes a duty to business invitees in the common areas of the shopping center. In Kandrac v. Marrazzo's Mkt. at Robbinsville, 429 N.J. Super. 79 (App. Div. 2012), the defendant was a commercial tenant in a shopping center. There, the lease provided that the

_____

[9] The fourth Hopkins factor—(4) ultimately, based on the considerations of public policy and fairness, the societal interest in the proposed solution—is the only factor plaintiff is appealing from.

A-2749-22

property owner was responsible for maintenance of the common areas of the shopping center, including the parking lot. Id. at 82. The plaintiff, a patron of the tenant, tripped on a raised area of the parking lot surface as she was walking from the tenant's store to her vehicle and was injured in the fall. Ibid. The fall occurred about two feet outside of a crosswalk in a roadway that separates the tenant's store from the parking lot. Ibid.

The motion court granted summary judgment in favor of the tenant. Id. at 83. The court concluded that a commercial tenant in a multi-tenant facility owes no duty of care to its invitee for an injury that occurred in the common area of the shopping center. Ibid. We affirmed the court's decision and held that as a general rule, when a commercial tenant in a multi-tenant shopping center has no control or contractual obligation to maintain a parking lot shared with other tenants, the common law does not impose a duty upon the tenant to do so. Id. at 90-91.

For the reasons we stated in Kandrac, we conclude the fourth Hopkins factor does not weigh in favor of plaintiff, requiring a conclusion that NATC did not owe plaintiff a reasonable duty of care at the time of the alleged negligence. We also conclude that the lease did not create a contractual obligation for NATC to maintain the parking lot. Because plaintiff failed to

demonstrate any genuine issue of material fact as to negligence or duty owed, the judge correctly granted NATC's cross-motion for summary judgment.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2749-22